MINERVA PEABODY *et al.*

*v.*

FRANK KENDALL *et al.*

*Filed at Springfield, November 25, 1892.*

1. PLEADING—*plea must answer all it professes to answer.* It is a familiar rule that a plea which professes to answer the whole declaration, but only answers a part, is bad.

2. SAME—*plea to writ of error must answer all the assignments of error.* Where a writ of error is sued out, and the plaintiff in error assigns for error the rendition of a decree setting aside a deed to him, and also the rendition of judgment for costs, a plea of the defendant in error that after the decree was rendered and before the writ of error was sued out, the plaintiff in error had parted with all interest in the land by his deed, and therefore had no interest in the land, and purporting to be a plea to all the errors assigned, is bad on demurrer, as failing to answer the assignment of error as to the judgment for costs.

3. PRACTICE IN SUPREME COURT—*judgment on demurrer.* Where two of several defendants in error file an insufficient plea to the writ of error, and a demurrer is sustained thereto, the decree below will be reversed as to them, although it is affirmed as to the defendants joining in error.

4. FRAUD—*undue influence in procuring execution of deeds.* In this case the facts and circumstances are stated which are held sufficient by this court to justify a finding that certain deeds of conveyance, from an aged father to one of his daughters and her husband, were procured to be made by fraud and undue influence.

5. MENTAL CAPACITY—*to make deeds of property.* Although a man, from advanced years and feeble health, may not possess the same mental capacity that he possessed in his younger days, and can not transact ordinary business as well as years before, yet if his mind is not impaired to such an extent as that he does not understand the nature and character of his business, or is not incapacitated from transacting ordinary business matters, he will possess sufficient mental capacity to make conveyance of his lands.

6. CHANCERY—*presumption that legal evidence alone is considered.* In the rendition of a decree in chancery, it will be presumed that the court disregarded and rejected all improper or irrelevant evidence, and based the decree on legal and competent evidence alone.

7. PRACTICE—*trying issue out of chancery.* This court will not reverse a decree in a suit in chancery merely for errors in the admission

of evidence, on the trial by jury of issues of fact, for the reason the trial court is not bound by the finding of the jury, and is presumed to have acted only on proper evidence.

WRIT OF ERROR to the Circuit Court of Adams County; the Hon. CHARLES J. SCOFIELD, Judge, presiding.

Mr. JOHN H. WILLIAMS, for the plaintiffs in error:

Undue influence means wrong influence, and to render a conveyance inoperative, must be of such a nature as to deprive the grantor of his free agency.

Impairment of memory, physical infirmity, having more vivid recollections of long past events than of recent occurrences, while they may tend to prove an impaired or weakened mind, do not prove mental disease, and are not irreconcilable with sufficient mental capacity to dispose of property by will or deed. If the mind and memory of the grantor are sufficiently sound to know and understand the business in which he is engaged, then he is of sound mind and memory, within the meaning of the law.

Impaired memory does not render a man of unsound mind and memory, and in order to destroy the capacity of a person to make a deed on account of the failure of memory, such failure must be total or extend to his immediate family and property. Redfield on Wills, 522; *Roe et al.* v. *Taylor*, 45 Ill. 491; *Yoe* v. *McCord*, 74 id. 44; *Burt* v. *Quisenbury*, 132 id. 385; *Rutherford* v. *Morris*, 77 id. 397.

Immoral conduct on the part of a testator or the grantor in a deed, even if the beneficiary in such deed or will participated in such immoral conduct, is not sufficient to invalidate such will or deed, and certainly it can not invalidate the will or deed in favor of a person not participating in such immoral conduct. *Dickie* v. *Carter*, 42 Ill. 388, citing *Fare* v. *Thompson*, Cheves (S. C.) 37.

Hearsay evidence is not proper under any state of facts developed by the record in this case, yet it was admitted by

the court on a question which largely contributed to the result of the trial. Greenleaf on Evidence, vol. 1, sec. 99; *Bowen* v. *Rutherford*, 60 Ill. 43.

The decree of the court is clearly against the preponderance of the evidence, and should be reversed for that reason. *Rutherford* v. *Morris*, 77 Ill. 397; *Burt* v. *Quisenbury*, 132 Ill. 385.

While the testimony of experts is proper, and under proper circumstances may be given in response to hypothetical questions, yet it is improper to permit such questions to be asked, unless they contain all the elements shown by the evidence necessary to the formation of a correct opinion, and it is equally improper to permit a hypothetical question to be asked and answered, which contains hypotheses of which there is no evidence. This was done with the witness, Dr. Robbins, and was, we think, clearly erroneous.

Messrs. CARTER, GOVERT & PAPE, and Messrs. SPRIGG & ANDERSON, for the defendants in error:

Where the abstract of plaintiffs in error is insufficient, defendants in error may file an additional abstract, and have the cost thereof charged against the adverse party. 28 Rule of Practice in Supreme Court; *Phelps* v. *Funkhouser*, 40 Ill. 27.

Where the chancellor is in view of the witnesses, hears the testimony, and finds the facts from the evidence, his decree, based upon and reciting such findings of fact, will not be reversed, unless palpably wrong. *Johnson* v. *Johnson*, 125 Ill. 510; *Baker* v. *Rockabrand*, 118 id. 365; *Barrows* v. *Barrows*, 138 id. 649.

A clear preponderance of the evidence shows that the three deeds set aside were obtained by Albert B. Peabody and Minerva E. Peabody of Lewis Kendall by undue influence practiced by them upon him.

(1)  What is undue influence, is a question to be decided upon the facts of each case wherein that issue is presented.

(2)  The feebler the mind, no matter from what cause, the less evidence of undue influence will be required to invalidate the deed.  *Reynolds* v. *Adams,* 90 Ill. 149.

The preponderance or the evidence shows that the deeds were obtained by fraud and undue influence, and that the grantor was of unsound mind.

If Lewis Kendall was of unsound mind when the three deeds were made, there was not, nor could have been, a delivery good in law, whatever may have occurred in fact.

To constitute a valid delivery of a deed, the grantor must intend to part with the title and lose control of the instrument and the ownership in such title, and the control of such instrument must pass from him to the grantee.  *Roan* v. *Baker,* 120 Ill. p. 312.

(1)  Mere tradition of a sealed instrument, even to the party in whose favor it is drawn, does not necessarily constitute a delivery.  *Brooks* v. *The People,* 15 Ill. App. 580; opinion by Mr. Justice Bailey.

(2)  If the deeds were handed by grantor, Lewis Kendall, to Minerva E. Peabody, one of the grantees, with the understanding between the parties that they were to be handed to grantor's attorney, to be held by him, and if they then remained subject to grantor's control, in the event he should desire to take them, such facts would not amount to a delivery.

(3)  A deed executed by the grantor, and in the possession of his attorney, who was not the attorney of the grantee, would be, in effect, in the possession of the grantor.

The matter of costs in a chancery suit, except on dismissal of the bill, is discretionary, and will not be reviewed by this court.  *Askew* v. *Springer,* 111 Ill. 662.

Mr. Justice Craig delivered the opinion of the Court:

This was a bill in equity, brought by Frank Kendall, Anna Kendall, his wife, Sarah Platt, Josiah Platt, her

husband, Julia Jansen, Henry H. Jansen, her husband, Laura Bywater, John Bywater, her husband, and Jane Jones and Mathew B. Jones, her husband, against Albert and Minerva Peabody, to set aside three deeds executed by Lewis Kendall, purporting to convey certain property to the defendants. It is alleged in the bill that Lewis Kendall died February 3, 1888, and left him surviving his widow, Sarah Kendall, and the following children, to-wit: Frank Kendall, Sarah Platt, Julia Jansen, Laura Bywater, Jane Jones, Mary Yates, and Minerva Peabody (wife of Albert B. Peabody), his only children, and William Jarrett, Minnie Jarrett and Roy Jarrett, his grandchildren (children of his deceased daughter, Emma Jarrett), his only heirs-at-law.

That at the time of his death said Lewis Kendall was seized of lot No. 5, in block 10, Webster's addition to the city of Quincy; also a part of S. E. quarter of section 23, township 1 south, range 9 west, bounded as follows: Beginning at the S. E. corner of section 23, running thence north 72 rods, thence west 15½ rods, then south 72 rods and thence east 15½ rods to the place of beginning; also lot 24 in Hinchman, Loomis & Brown's subdivision of S. W. quarter of section 24, township 1 south, range 9 west; also a part of S. E. quarter of section 23, 1 south, 9 west, bounded as follows: Beginning at a point on the south line of said quarter section 15½ rods west of the S. E. corner of said quarter section, running thence north 72 rods, thence west 22 2-9 rods, thence south 72 rods, and thence east 22 2-9 rods to the place of beginning,

That said Lewis Kendall, in his life-time, and on or about April 8, 1885, pretended to make a deed to Albert and Minerva Peaboby for the tract of land first above described.

That about August 14, 1885, he pretended to make a deed to said Peabodys for the land secondly above described, and on January 11, 1888, he pretended to make a deed to the same parties for the tract of land thirdly above described. Said three deeds are attached, marked Exhibits "A," "B" and "C."

Avers that the deeds were without consideration, and that the execution and delivery thereof were obtained by the fraud and connivance of the grantees, and by undue influence practiced by them upon Lewis Kendall. That at the time of the execution of each of said deeds said Lewis Kendall was not mentally capable to execute said deeds. That said grantees falsely and fraudulently represented to said Lewis Kendall that the complainants and Sarah Kendall, his wife, were unfriendly to him and desired to obtain his property, and that they, the grantees in said deeds, were the only ones of his children who cared anything for him.

It is also averred in the bill, that neither of the deeds was ever delivered by Kendall. It is also alleged, that Lewis Kendall died testate, that his will was admitted to probate. The will bears date March 21, 1881, and a codicil thereto was dated July 7, 1884.

The defendants, Albert and Minerva Peabody, put in an answer to the bill, in which they denied the mental incapacity of Lewis Kendall, the non-delivery of the deeds, undue influence, fraud, etc. The court made an order for an issue out of chancery to be tried by a jury to decide:

First—Whether the three deeds sought to be set aside, or either of them, and if either of them which were or was obtained by undue influence practiced by the grantees or either of them on Lewis Kendall;

Second—Whether said Lewis Kendall, at the time said deeds, or either of them, and if either which, was signed by him, was of unsound mind;

Third—Whether said deeds, or either of them, and if so, which was or were obtained by either of the Peabodys by fraud, artifice or deceit;

Fourth—Whether said deeds were ever delivered;

Upon a trial of the issue before a jury the following verdict was returned.

First—That each of the deeds was obtained by undue influence of Albert and Minerva Peabody.

Second—That Lewis Kendall was of unsound mind when each of said deeds was signed by him.

Third—That each of said deeds was obtained by Albert and Minerva Peabody by fraud, artifice and deceit.

Fourth—That neither of said deeds was ever delivered by Lewis Kendall.

The court approved the verdict of the jury, and entered a decree in accordance with the verdict, setting aside each of the three deeds. To reverse the decree, the defendants in the bill sued out this writ of error.

Two of the defendants in error, Laura Bywater and Frank Kendall, have interposed a special plea in this court to the writ of error, in which they set up, that after the decree was rendered in the Circuit Court, and before the writ of error was sued out, the said Minerva E. and Albert B. Peabody sold, assigned, transferred, and by their deed of conveyance, conveyed the lands described in the decree, and thereafter had no title or interest in said lands. The plaintiffs in error interposed a demurrer to the pleas, and the question presented is whether the facts set up in the pleas constitute a defense to the writ of error. The pleas profess to answer all the errors assigned, and if the facts therein stated constitute an answer to only a part of the errors assigned, then they are bad, and the demurrer will have to be sustained. Upon looking into the record, it will be found that one of the errors assigned is, that the court erred in rendering judgment against the plaintiffs in error for costs. The pleas contain nothing which can be considered an answer to that assignment of error. Conceding that plaintiffs in error conveyed their interest in the lands described in the decree before the writ of error was sued out, and had no interest after such conveyance in the lands, the subject matter of the litigation, that fact would not deprive them of the right to sue out a writ of error to reverse the judgment which had been rendered against them for costs.

It is a familiar rule, that a plea which professes to answer the whole declaration, but only answers a part, is bad; that principle controls here. The demurrer will have to be sustained to the two pleas.

Various rulings of the court during the trial of the issue out of chancery are claimed to be erroneous, and on account of these alleged errors a reversal of the decree is asked. We shall not stop to inquire, whether the court erred in the rulings on the trial of that issue. The verdict of the jury was advisory merely, and, as it was not binding, any ruling of the court, on the admission or rejection of evidence during the trial, would not affect the decree which the court finally rendered. Upon the return of the verdict the court could reject it in whole or in part, as might be thought best, and render such a decree as in the opinion of the court the evidence might warrant. In rendering the decree, it will be presumed that the court disregarded and rejected all irrelevant evidence and predicated the decree on legal, admissible evidence. The only question, therefore, to be considered, is whether the decree rendered by the court is sustained by the evidence, and when we speak of evidence, it will be understood that we refer to legal testimony, such as is admissible under the established rules of evidence.

It will be observed that the jury found that the three deeds were not delivered, and this finding is sustained by the decree.

John H. Williams testified that he wrote the two deeds dated August 14, 1885, and January 11, 1888; that he saw Lewis Kendall deliver to Mrs. Peabody the first named deed, and that she then gave it to him for safekeeping. Cruttenden, a notary public, testified that he saw Kendall execute the deed of date January 11, 1888; that after it was acknowledged, Kendall delivered it to Mrs. Peabody. And Williams testified that she afterwards gave it to him. He also testified that the deed of April 8, 1885, was given to him by Mrs. Peabody. If these two witnesses testify to the

truth, and we find no evidence in the record which contradicts or overcomes their evidence, then it is plain the deeds were all delivered. It has been suggested in the argument that the grantor, Kendall, did not possess sufficient mental capacity to make a valid deed, and hence there was no delivery. If Kendall did not possess sufficient mental capacity to make a valid conveyance of his property, perhaps it might be held that he was incapacitated from delivering the deeds, as no deed is a valid instrument until delivered; but as we shall attempt to show hereafter, we think the grantor did possess sufficient mental capacity to make a conveyance of his property. The jury found that Kendall was of unsound mind when the deeds were executed, and this finding was sustained by the decree. It is true that Kendall, at the time the deeds were executed, was advanced in years, he was in feeble health, his eye-sight was impaired from cataract, and owing to advanced years and feeble health, his mind was not as vigorous as in former years. But after a careful consideration of all the evidence, we do not regard it sufficient to maintain this finding. It is doubtless true that he did not possess the same mental capacity for transacting business which he possessed in younger years, and could not, perhaps, transact ordinary business as well as he did years before; but his mind was not impaired to such an extent that he did not understand the nature and character of the business in which he was engaged or that he was called upon to transact. A large number of his neighbors, who met him almost daily, were called as witnesses, and they agree, with much unanimity, that he was capable of transacting ordinary business. Some witnesses gave it as their opinion that he was not capable of making a conveyance of his property; but, in our opinion, the decided preponderance of the evidence is that he was capable of transacting ordinary business, and hence had sufficient mental capacity to execute the deeds. On this branch of the case we are, therefore, of opinion, that the decree is not sustained by the evidence.

But the most difficult question presented by the record is whether the three deeds executed by Kendall to Albert and Minerva Peabody were obtained by the fraud and undue influence of the grantees. Lewis Kendall died February 3, 1888, at the age of seventy-eight years. He was a farmer, and had resided on a farm one mile north of Quincy about fifty years. The farm had consisted of one hundred and ten acres, but portions of it had been sold from time to time, so that at the time of Kendall's death there remained, including those parts deeded to the Peabodys, only fifty acres. Kendall had also owned certain houses and lots in Quincy, one known as the Sunset Hill property, which he conveyed on the 8th day of April, 1885, to Albert and Minerva Peabody. On the 14th day of August, 1885, he made a second conveyance to them of seven acres of land, including the home residence, barn and out-buildings, and a five-acre lot, No. 24. On January 11, 1888, three weeks before his death, he conveyed to them ten acres immediately west of the seven-acre tract. Upon the death of Kendall he left him surviving a widow, Sarah Kendall, and nine children, or descendants of children, Minerva Peabody, to whom the deeds were made, being the oldest. Sarah Kendall, the wife of the deceased, did not join in the execution of the deeds. Indeed, she had no knowledge of their existence until after her husband's death. Much evidence was introduced on the trial by the complainants, for the purpose of showing that the three deeds were executed by the fraud and undue influence of Albert and Minerva Peabody. A portion of this evidence, we are free to admit, has little or no bearing on the question involved. But, owing to the large number of witnesses who testified in the case, we will not be able to refer to the evidence of the witnesses in detail, but we will content ourselves by stating, in general terms, the conclusion reached from an examination of the evidence as it appears in the record. For a number of years before Kendall's death he and his wife did

not live together on friendly terms. She was several years his senior, her health was poor, and she was exceedingly jealous of her husband. Six or seven years before Kendall's death he became quite intimate with a married woman in the neighborhood; he became a frequent visitor at her home and was much in her company; his conduct with this woman became distasteful to his wife and other members of the family. The Peabodys at first condemned the conduct of Kendall in bitter terms, but suddenly, however, they changed their conduct, and seemed to approve whatever Kendall did, and rendered him such aid and assistance as they reasonably could, to accomplish his wishes and purposes. They allowed Kendall to meet this married woman at their home; letters were exchanged between the two at the home of the Peabodys. On account of this friendship and assistance shown by the Peabodys to Kendall, the relations between the parties became very friendly and intimate.

Mrs. Peabody was frequently at the home of Kendall, in his room, talking privately to him. She spoke in unfriendly terms concerning her mother and the other members of the family, and, doubtless, through her influence exerted over him, his mind became somewhat prejudiced against his other children. Through her advice and influence his family physician was discharged and another employed; the newspaper he had taken for years was stopped and another taken. In various ways, as appears from the evidence, the Peabodys controlled and directed the actions and conduct of Kendall. Indeed, there is much evidence in the record tending to prove that the Peabodys, having gained the confidence of Kendall by agreeing with him in any opinion he might entertain and assisting him to carry out his purposes and desires with the married woman, for whom he seemed to entertain so much regard, took advantage of his advanced years and enfeebled mind to obtain from him conveyances of his property.

34—145 Ill.

Whether the Peabodys had used undue influence and fraud to obtain the deeds, was purely a question of fact to be determined by the court from all the evidence. All of the witnesses who testified in the case, except one, appeared in court. The court saw the witnesses and heard them testify. Under such circumstances, under the uniform ruling of the court, much weight will be given to the finding of the court.

The rule on this subject is indicated in *Baker* v. *Rockabrand*, 118 Ill. 370, where it is said: "This court has frequently said, that when the trial court saw and heard the witnesses, with the opportunity of observing them while testifying, this court would attach much weight to the finding of the trial court, and would not reverse upon mere questions of fact, unless such finding was palpably erroneous."

In view of all the evidence in this record heard by the trial court, we are not prepared to say that the finding on the question of undue influence and fraud was palpably erroneous.

As to all the plaintiffs in error, except Frank Kendall and Laura Bywater, who interposed special pleas, the decree will be affirmed. As to these two the demurrer will be sustained to the pleas, and the decree reversed and the cause remanded.

*Decree affirmed in part and in part reversed.*