## Elisha Leffingwell, Jr., et al., v. Caleb Bentley, Ex., et al.

1. WILLS—*Oral Evidence Held Not to Assist in the Construction of a Will.*—The court holds that the competent oral evidence introduced on the trial of this case does not specially assist in the interpretation of the will involved, and that the meaning of said will is to be determined from the face of the instrument.

2. SAME—*A Will Construed.*—A will provided as follows: " My real and personal property shall be divided as follows: * * * shall share and share alike; my sister Harriet's share will be $70 less than the above mentioned heirs." *Held,* that Harriet should receive $70 less than the entire sum paid to the other devisees.

3. EVIDENCE—*Presumptions as to Incompetent Evidence in Chancery Trials.*—It is presumed that the chancellor, in trying a chancery cause, acts only upon the competent evidence.

Leffingwell v. Bentley.

**Bill to Construe a Will.**—Appeal from the Circuit Court of Winnebago County; the Hon. John C. Garver, Judge, presiding. Heard in this court at the December term, 1897. Affirmed. Opinion filed February 28, 1898.

## Statement of the Case.

This was a bill in equity filed by Caleb Bentley, executor of the last will and testament of William S. Leffingwell, deceased, against the several beneficiaries in said will, for a construction of the will and a determination of the relative proportions of the estate said beneficiaries are to receive by the terms thereof. The controversy argued here relates to the share and proportion Mrs. Harriet Calvin, a sister of the testator, and one of the appellees, is to receive, as between herself and her nephews and nieces, the appellants. The part of the will upon which the rights of said parties depend is as follows: "After my debts and necessary funeral expenses are paid, what remains of my real and personal property shall be divided among my heirs as follows: My brother Elisha's sons, Lawrence and Homer, and Elisha, Jr., and daughter Marion, and my brother Josiah's son Howard, and brother Levi's son Lamont, and daughter Indianola, shall share and share alike; my sister Harriet's share will be $70 less than the above mentioned heirs." Appellants claim the meaning of the foregoing provision is that the share of Harriet is to be $70 less than the share of each of said nephews and nieces; in other words, that from the estate to be distributed among all said parties above named, $70 should be paid to each of said seven nephews and nieces, and then the remaining sum to be distributed should be divided into eight equal parts, and that each should receive one such share, and their aunt, Harriet, should receive one such share. Mrs. Calvin's contention is that she is to receive $70 less than the entire sum to be paid to said nephews and nieces; that is, that $70 is to be set aside and the balance divided into two equal parts, and that she is to receive one of said parts, and the other part, plus the $70, is to be divided share and share alike among said seven nephews and nieces. The court below entered a decree in favor of Mrs. Calvin.

Mrs. Calvin introduced oral testimony to aid in the construction of said will, by showing the·· acquaintance and intimacy or lack thereof between the said several beneficiaries and the testator. Her chief witness was her husband, John Calvin, called by the executor to prove formal matters, but by whom Mrs. Calvin, on cross-examination, showed that she had performed many sisterly services for the testator, who was a bachelor and an old man, and usually lived alone upon his farm near her. Appellants objected to the competency of the husband to testify in behalf. of his wife, claiming she would not be a competent witness in her own behalf, and therefore he could not testify for her. The court heard the evidence subject to objection. Mrs. Calvin also called the executor, who testified to the value of the estate, and to the fact that the will is in the handwriting of the testator. She also called Lawrence Leffingwell, one of the nephews, who was competent because called against his own interest, and whose testimony showed that most of the nephews and nieces named in said will lived in Pennsylvania, Ohio and Indiana; that most of them never lived in Winnebago county, Illinois, the home of the testator; and that he, Lawrence, had not met the testator since 1876.

ARTHUR H. FROST and ROBERT G. McEVOY, attorneys for appellants.

In the interpretation of wills the first and natural impression conveyed to the mind on reading the clause involved is entitled to great weight. The testator is not supposed to be propounding riddles, but rather to be trying to convey his idea in the simplest manner, so as to be understood correctly at first view. When this impression is confirmed by the application of grammatical rules to the clause as constructed,.it derives great additional support. Bobb's Succession (La.), 5 So. Rep. 757. ·

The plain and unambiguous words of the will must prevail, and are not to be controlled or qualified by any conjectural or doubtful constructions growing out of the

situation, circumstances or conditions either of the testator, his property or his family. Bonard's Will, 16 Abb. Pr. N. S. 204; Mann v. Mann, 14 Johns. 1; Parsons v. Winslow, 6 Mass. 169; Gibson v. Seymour, 102 Ind. 488.

In construing a will the words are to be construed according to their natural import, unless the context evidently points out that in the particular instance there should be some other construction. Sheriff v. Brown, 5 Mackey, (Sup. C., D. C.) 172; In re Hallet, 8 Paige Ch. 378; Puryear v. Edmondson, 4 Heisk. 51.

A testator must be presumed to have used words in their ordinary sense or meaning. In re Woodward, 117 N. Y. 522.

All doubts are to be resolved in favor of the testator having said exactly what he meant. Cody v. Bunn's Ex'r, 46 N. J. Eq. 131.

When the provisions of the will are clear and simple, no reason exists for taking the testator's words in any other than their natural sense. Wylie v. Lockwood, 86 N. Y. 301; Lovett v. Buloid, 3 Barb. Ch. 137.

The question in expounding a will is not what the testator meant but what is the meaning of his words. Hancock's Appeal, 112 Pa. St. 532.

The words "share and share alike," or "to be equally divided" import an intention; when they are used in a will they mean a division *per capita*. Richards v. Miller, 62 Ill. 417; Pitney v. Brown, 44 Ill. 363; Best v. Farris & Wall, 21 Ill. App. 49.

When the devisees are named and are to take share and share alike, they take *per capita* and not *per stirpes*. Kelley et al. v. Vigas et al., 112 Ill. 242.

Whenever as a class the beneficiaries are individually named or are designated by their relationship to some ancestor living at the time of the will, whether to the testator or to some one else, they share *per capita* by natural inference and not *per stirpes*. Schouler on Wills (2d Ed.), 540; 2 Jarman on Wills, 194; Farmer v. Kimball, 46 N. H. 435; Hill v. Bowers, 120 Mass. 135; Thompson v. Young, 25 Md.

461; Post v. Herbert's Ex'rs, 27 N. J. Eq. 540; Young's Appeal, 83 Pa. St. 59; Walker v. Griffin's Heirs, 11 Wheat. 375; Collins v. Hoxie, 9 Paige, 89; Conner v. Johnson, 2 Hill's Ch. (S. C.) 41.

A particular intent in a will is to be made subordinate to a general purpose. Workman v. Cannon, 5 Harr. (Del.) 91; Thrasher v. Ingram, 32 Ala. 645; Pickering v. Langdon, 22 Me. 413.

WILLIAM LATHROP, attorney for appellee Harriet Calvin.

Extrinsic evidence is admissible only to place the court as far as possible where it may interpret the language used from the standpoint of the testator at the time he employed it, and thus aid the court in reaching the testator's intention. Bingel v. Volz et al., 142 Ill. 214; Greenleaf's Ev., Vol. 1, Secs. 288, 289; Bond's Appeal, 31 Conn. 183.

The intention found, however, must be that expressed by the language of the will, and the rule is inflexible that surrounding circumstances can not be resorted to for the purpose of importing into the will any intention of the testator not therein expressed. Bingel v. Volz, 142 Ill. 214; Schouler on Wills, Secs. 467, 469.

Jarman's Rule 8 is, that "Extrinsic evidence is not admissible to alter, detract from or add to the terms of a will (though it may be used to rebut a resulting trust attaching to a legal title created by it, or to remove a latent ambiguity arising from words equally descriptive of two or more subjects or objects of gift)." Jarman on Wills, Vol. 2, 841.

A will should receive such a construction, if that can be reasonably given, as shall give force and effect to every word and clause thereof, and if a prior and subsequent clause are repugnant, the prior should be sustained or modified by the subsequent. Siddons v. Cockrell, 131 Ill. 653.

Whether aided by extrinsic evidence or not, the fundamental rule is to ascertain, from the language used in the will, the intention of the testator. Rountree v. Talbot et al., 89 Ill. 246; Schouler on Wills, 466.

The court will look at the circumstances under which the devisor makes his will, as to the state of his property, of his family and the like. Schouler on Wills, Secs. 465, 466, etc.; Secs. 567, 568, etc.

MR. JUSTICE DIBELL DELIVERED THE OPINION OF THE COURT.

If John Calvin was not a competent witness in behalf of his wife, still it was proper for the court to hear his testimony subject to objection; and the chancellor will be presumed to have acted upon the competent evidence. Gordon v. Reynolds, 114 Ill. 118; Peabody v. Kendall, 145 Ill. 519. We think the competent oral evidence does not specially assist in the interpretation of this will, and that its meaning is to be determined from the face of the instrument.

The testator states that his real and personal property is to be divided among his heirs, as follows: That his nephews and nieces, Lawrence, Homer, Elisha, Jr., Marion, Howard, Lamont and Indianola should share and share alike. Then the will states that his "sister Harriet's share will be $70 less than the above mentioned heirs." The word used is plural, and naturally refers to and includes all the heirs he had previously named, and does not naturally refer to any one of said heirs, or to each one of them separately considered. To obtain the meaning claimed by appellants, we must change the form adopted by the testator from the plural to the singular by inserting the word "each" when he did not use that word or any equivalent thereof; and we must make the will read "sister Harriet's share will be $70 less than the share of each of the above mentioned heirs." We think this is not the natural meaning of the words employed by the testator, and we see no reason for thinking he intended any other than the natural meaning of the words used. A later paragraph of the will provided that, "If any of the heirs should not be living when the estate is settled, their portion may be equally divided among the other heirs." We are unable to see how this clause aids appellants' construction of the former provision. It is not claimed their aunt Harriet was to share equally

with any nephew or niece under the clause here drawn in question, and the fact that if any nephew or niece died, Harriet would share equally in the distribution of the part given said deceased heir, does not cast any light upon the meaning of the words employed in the clause here in controversy.

The will contained a provision for placing $500 in the hands of a trustee for the benefit of Albert Leffingwell, a brother of the testator. The court below, in its decree, appointed a trustee of said fund, and carried said provision into effect. Error is assigned upon this action, but both parties, in their briefs, assent to that part of the decree, and thereby withdraw it from our consideration.

The decree of the court below is in harmony with the views here expressed, and will be affirmed.