THE CITIZENS NATIONAL BANK OF PARIS, Ex'r of the Will of Milton D. Pearson, Deceased, Plaintiff-Appellee, *v.* WESLEY S. PEARSON *et al.*, Defendants-Appellants.

Fourth District No. 15086

Opinion filed December 29, 1978.—Rehearing denied January 30, 1979.

Charles R. Young and Charles C. Hall, both of Young and Hall, of Danville, for appellants.

Alfred H. Kreckman, Jr., of Massey, Anderson & Gibson, of Paris, for appellee.

Mr. JUSTICE GREEN delivered the opinion of the court:

By order of June 6, 1978, the circuit court of Edgar County set aside a June 24, 1976, deed of Milton D. Pearson (hereinafter "grantor") to defendants Wesley S. Pearson and Norma L. Pearson on the ground that grantor, on that date, was incompetent to execute the deed. The deed was given without consideration and purported to convey grantor's 120-acre farm to grantees, reserving a life estate therein. The suit was initiated during grantor's lifetime by his conservators and upon his death, plaintiff, The Citizens National Bank of Paris, was substituted in their behalf. On appeal, defendants contend: (a) an improper standard was applied to test grantor's mental capacity to execute the deed; (b) the finding of grantor's incompetency to execute the deed was contrary to the manifest weight of the evidence; and (c) an order adjudicating grantor an incompetent and appointing a conservator was improperly admitted into evidence. Defendants further assert that the trial court erred in awarding costs to plaintiff.

Thirteen witnesses testified on plaintiff's behalf, among these being: (a) seven employees of the Shady Rest Nursing Home in Paris, Illinois, where grantor resided from early 1975 until his death, each of whom had daily exposure to grantor on and around June 24, 1976; (b) a medical doctor who had conducted a number of examinations of grantor; (c) grantor's family attorney; and (d) two longtime neighbors of grantor. Repeated corroborating testimony was given that (1) grantor was unable to transact ordinary business and incapable of protecting his own interests in an adversary situation; (2) grantor could not carry a thought process through to conclusion; and (3) grantor could not have understood the nature and effect of a transaction occurring during June and July of 1976. Further testimony indicated that grantor could not have originated the thought of executing a document such as the deed. Seven witnesses stated that, in their opinion, grantor was not of sound mind and memory at the relevant time.

Grantor was otherwise variously described by these witnesses as "confused," "disoriented," "disoriented as to time and place," unable to carry on a normal conversation, "forgetful," unable to remember the day or season, and disoriented as to persons. The evidence was disputed as to whether he could recognize longtime friends and acquaintances.

A registered nurse employed at the nursing home testified that although grantor knew his name, he would often give incorrect responses to questions as to where he was or what time it was. A nurse's aide at the home testified that grantor appeared to understand his mail when it was read to him and also appeared to know his visitors most of the time. A licensed practical nurse at the home stated that often grantor could not

remember what day it was or carry on a coherent conversation. Longtime neighbors of grantor testified that he had to be reminded what season it was and that he was at the nursing home rather than at his farm.

The medical doctor testifying on plaintiff's behalf had examined grantor in January, April, and July of 1976. He stated that grantor had an advanced case of cerebral arteriosclerosis and that this condition undoubtedly had an effect upon grantor's mental ability. When asked whether grantor would have been of sound mind on June 24, 1976, he responded "I would have to say sound mind, no." He admitted that grantor's ability to understand a thought process would vary from day to day but stated that his underlying condition would remain the same.

Robert Reel, a longtime friend of grantor, and the attorney who prepared the deed in question, appeared on defendants' behalf, giving testimony relevant to grantor's mental state on the date of the execution of the deed. Reel testified that grantor had initiated the idea of the deed at Christmas time, 1975, and had requested him, Reel, to have an attorney prepare the deed. According to Reel, grantor stated that he did not want the farm to go to those persons so designated in his will but wished the farm to go to defendant grantees who were his only heirs at law. Reel further testified that in June of 1976, grantor told him that it was time to take "care of" the deed and "get my business in order." Reel maintained that grantor never failed to recognize him.

The parties do not dispute that at the time of the execution of the deed, present in addition to grantor were Reel, the attorney obtained to draft the deed, a registered nurse, the nursing home's secretary-bookkeeper, and the attorney's secretary. The testimony as to what transpired then and the opinions of the witnesses present as to grantor's then capacity will be set forth later in our discussion of the weight of the evidence.

■ Greater mental capacity is required to make a deed than is required to execute a will. (*McGlaughlin v. Pickerel* (1943), 381 Ill. 574, 46 N.E.2d 368.) However, no greater mental capacity is required to make a deed of voluntary settlement reserving a life estate than is required to make a will. (*McGlaughlin; Harrington v. Travis* (1932), 349 Ill. 606, 182 N.E. 769.) Defendants contend that, in testing grantor's mental capacity, the trial court erroneously applied the standard applicable to one executing a deed.

In its memorandum opinion, the trial court stated:

> "Defendants argue that since Pearson retained a life estate the proper test regarding his capacity to make a valid conveyance is the same as the capacity needed for the making of a valid last will and testament. Plaintiff argues that * * * the test should be that

declared by our Courts of review in cases where no life estate was reserved: that is, did the grantor have the capacity to transact ordinary business.

* * *

[R]egardless of the arguments of the parties as to which criterion the Court should follow in determining Pearson's mental capacity on June 24, 1976, the Court finds the evidence to be overwhelming that the grantor, Milton D. Pearson, did not have adequate mental capacity to make the deed in question. The credible evidence presented to this Court indicates that the grantor had little if any mental capacity to comprehend the nature of his act."

and

"An examination of all the evidence in the case clearly establishes that Milton D. Pearson was totally incompetent to execute the deed in question."

In view of this language, we conclude that the trial court found grantor's mental capacity insufficient under either standard.

The rules governing testamentary capacity have been stated to be as follows:

"To [lack testamentary capacity] the testator, at the time he executes his will, must lack sufficient mental capacity to know the natural objects of his bounty, to comprehend the kind and character of his property, to understand the nature and effect of his act, and to make a disposition of his property according to some plan formed in his mind. [Citations.]" (*Sloger v. Sloger* (1962), 26 Ill. 2d 366, 370, 186 N.E.2d 288, 290.)

Unlike an ordinary grantor, a testator need not have capacity to transact ordinary business affairs. *McGlaughlin.*

Reel testified that at the time of execution of the deed, he explained to grantor that he had brought an attorney "to take care of your farm business" and asked, "Do you want him to go ahead and take care of it?" and grantor responded, "I sure do." Reel stated that the deed was then presented by the lawyer and explained to grantor who then signed with an "x." Grantor had apparently been signing documents in this manner for some time and had done so when he was admittedly competent. Reel believed that at the time of execution, grantor knew what he was doing and wanted to make the conveyance. The testimony of the drafting attorney corroborated that of Reel but the attorney acknowledged that he had never seen the grantor before. The registered nurse who was present testified that grantor was confused on that day but could not elaborate as to the degree of his confusion. The secretary-bookkeeper had no opinion as to the grantor's mental state. The attorney's secretary did not testify as to mental capacity.

Reel admitted on cross-examination that at times grantor was confused and that grantor did not initiate many ideas. He also admitted on cross-examination that he, and not grantor, initiated the idea of having an attorney draw up a deed, thus impeaching his direct testimony to the contrary on the point. He also stated that he did not have grantor execute the deed in early 1976 because grantor was then on heavy medication and he questioned grantor's competency to make the deed at that time. He was also impeached by four witnesses who testified that he had a poor reputation for truth and veracity although this testimony was rebutted by two witnesses who testified that his reputation in that respect was good. The weight of the testimony of the lawyer who drafted the deed as to grantor's capacity was limited by his lack of prior acquaintance with the grantor and because the questions he asked the grantor were answered by nods of the head, such being the only communication between the lawyer and the grantor.

■■ Plaintiff has maintained throughout that because a substantial gift tax liability was incurred by grantor in making the gift of the remainder interest, the transaction was not the simple one described in *McGlaughlin* and the standard of competency for making a deed rather than for making a will was applicable. Much of plaintiff's testimony was directed towards this standard. However, from the large amount of testimony describing the grantor's advanced stage of senility, the trial court could have concluded that the grantor did not "understand the nature and effect of his act" and did not understand that he was disposing of the remainder interest in his farm. The ruling of the trial court was not contrary to the manifest weight of the evidence regardless of which standard was applicable.

During trial, the court admitted into evidence, over defendants' objection, an order dated July 20, 1976, adjudging grantor an incompetent as defined by section 11—2 of the Probate Act (Ill. Rev. Stat. 1977, ch. 110½, par. 11—2) and appointing a conservator. Defendants contend that such was improper to prove the mental state at issue, and therefore was erroneously admitted, noting that (a) the standard for such an adjudication is different from that by which an individual's mental capacity to execute a deed as here is tested, and (b) the order was entered after, rather than prior to, execution of the deed.

In *Redmon v. Borah* (1943), 382 Ill. 610, 48 N.E.2d 355, an appeal involving a request to set aside a March 26, 1937, deed on the grounds of mental incapacity of the grantors, the court noted as an undisputed fact that on April 5, 1937, one of the grantors was adjudged an incompetent and a conservatrix was appointed for his estate. In *Greene v. Maxwell* (1911), 251 Ill. 335, 96 N.E. 227, an action to set aside a February 20, 1909, deed for insufficient mental capacity of the grantor, the court stated, in

detailing the facts before it, that grantor had been adjudicated of unsound mind and a conservator had been appointed for him on April 5, 1909.

Defendants rely upon *Lewandowski v. Zuzak* (1922), 305 Ill. 612, 137 N.E. 500. There, an appeal from a ruling setting aside a will on grounds of unsoundness of mind was taken, citing as error the trial court's admission into evidence over objection of a March 23, 1916, order of the county court committing the testator to a hospital for the insane. The will at issue had been executed on March 16, 1916. In ruling it to have been error to admit the order, the supreme court noted (a) that the order included the report of two physicians finding testator to be a person fit to be sent to such hospital and further finding testator's disease to be of seven month's duration and to have been caused by alcoholic psychosis and (b) the certificate of the physicians was submitted to the jury without an opportunity for cross-examination. The supreme court stated that a different issue was involved in the commitment proceeding than in the case at hand and recognized that even though a person may be of a state of mind to dictate his commitment, he may nonetheless have a sufficient mental state to execute a will. *Lewandowski* did not turn on the order's entry having occurred subsequent to the execution of the will.

■■ We do not find *Lewandowski* determinative of the issue here. No documents similar to the physicians' reports were included in the instant order. The record gives no indication that the trial court gave any substantial weight to the evidence of the adjudication. In *Pendarvis v. Gibb* (1927), 328 Ill. 282, 159 N.E. 353, the court ruled that although the standards for appointment of a conservator and the competency of a person to make a will are not the same, evidence of the appointment of a conservator prior to the execution of a will may be considered in determining a testator's competency. Here, the conservator was appointed less than one month after the execution of the deed. In view of the dictum of *Redmon* and *Greene* indicating that admission of evidence of appointments of conservators shortly after the execution of the instrument in question is not improper, we rule that no reversible error occurred here.

■■ At the close of plaintiff's evidence, the trial court dismissed count III of the plaintiff's five-count complaint. Thereafter, in rendering its ruling, the court ordered defendants to pay the costs of the proceeding. Defendants assert this to have been an abuse of discretion in light of section 12 of "An Act * * * in relation to costs" (Ill. Rev. Stat. 1977, ch. 33, par. 12), and this court's decision in *Rauwolf v. Travelers Indemnity Co.* (1974), 20 Ill. App. 3d 226, 313 N.E.2d 504.

The pertinent statute on costs provides:

"Where there are several counts in any complaint, and any one of them be adjudged insufficient, or a judgment on any issue joined

thereon shall be rendered for the defendant, costs shall be awarded in the discretion of the court." (Ill. Rev. Stat. 1977, ch. 33, par. 12.)

In *Rauwolf*, this court upheld an equal apportionment of the costs of a suit between the parties where plaintiff had prevailed upon his claim for compensatory damages but defendant prevailed upon the claim for punitive damages.

Under the circumstances the award of costs was a matter of the trial court's discretion. We find no abuse.

We affirm.

Affirmed.

CRAVEN and TRAPP, JJ., concur.