WILLARD W. CROSE, Plaintiff-Appellee, *v.* FLOYD BENTON CROSE, Defendant-Appellant.

*Third District*   No. 80-104

Opinion filed December 16, 1980.—Modified on denial of rehearing January 20, 1981.

Stanley L. Tucker, of Hartzell, Glidden, Tucker & Neff, of Carthage, for appellant.

Albert V. Ancelet of Capps, Cosgrove, & Ancelet, of Carthage, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by Floyd Crose from a judgment of the Circuit Court of Hancock County, which declared a deed to him from his father of a 303-acre farm to be invalid, void, and of no effect, because the father (plaintiff Willard W. Crose) did not have sufficient mental capacity to validly execute the deed and because the deed was executed as a result of

undue influence exerted by the defendant, Floyd Crose, upon the plaintiff, Willard Crose.

The disputed deed was executed on August 25, 1977, in the office of attorney Samuel Naylor VI. Attorney Naylor is the brother of Floyd Crose's daughter-in-law, Nancy Naylor Crose. Attorney Naylor had, prior to the week of the execution of this deed, never served as Willard Crose's attorney. Willard Crose considered his attorney to be Mr. Capps, of the firm which represented him at the trial of this case. Mr. Naylor had previously served as the attorney for Floyd Crose. On August 19, 1977, Nancy Naylor Crose arranged for an appointment with her brother, Samuel Naylor VI, so that Willard Crose could execute the deed in question. On Monday, August 22, Willard Crose, Floyd, and Floyd's wife drove to Attorney Naylor's office. The evidence indicates that they went in Willard's car and that Willard drove. Prior to their departure for the attorney's office, Floyd's wife yelled at Willard, saying that Floyd deserved the farm and that Floyd's sisters (Willard's daughters) were trying to cheat Floyd out of it. This upset Willard. After their arrival at the attorney's office, Attorney Naylor told them that he would have to research the matter, because he was not sufficiently familiar with how the estate and gift tax provisions of the Tax Reform Act of 1976 affected the transfer. Accordingly, the Croses went home and returned three days later, on August 25. On that date, Attorney Naylor explained that the gift would be subject to $38,000 in tax.

It is disputed whether or not Attorney Naylor also explained that a $30,000 unified tax credit would apply. Besides the disputed real property, Willard Crose's total liquid assets amounted to $38,366.45. The farm was valued at about $150,000. Willard Crose signed the deed, which transferred a fee to his son Floyd for the consideration of love and affection, i.e., as a gift. On the same date, at Attorney Naylor's office, Willard executed a will. A few weeks later, Willard's daughter, Doris, read about the conveyance in the newspaper. She testified that, when she questioned her father about it, he claimed to have no recollection of the events and no intention of making such a deed. Willard himself testified at this trial to the same effect. On October 3, 1975, in the office of the Capps law firm, Willard Crose executed a second will. It is not necessary that we set out the contents of these wills, as Willard Crose is still living. Willard Crose has three living children, Floyd, Doris and Maxine. A third daughter is deceased, but is survived by children, among whom is Dena Fleming, who has resided with Willard Crose most of her life.

A psychiatrist and a psychologist each testified that Willard is suffering from arteriosclerosis. As a result, he has good recollection of events in the distant past, but his ability to absorb and act upon new information is that of a five-year-old. Willard was 82 years old on August

25, 1977. The sister of Willard's deceased wife testified that, prior to August 22, 1977, Floyd asked her if his parents had wills. He then told her that Willard was going to deed him the farm. When she asked if Willard knew that, Floyd responded, "No."

Floyd has worked on the farm since 1954, when he received a hardship discharge from the Army so that he could assist his father, who was temporarily disabled by an injury. From 1954 to 1973, Floyd had worked on the farm on what he described as an equal partnership basis. In 1973, after the death of his wife, Willard went into retirement. Floyd then ran the farm as a tenant, giving his father a 50% share of the crops. The disputed deed reserved no interest in the farm to Willard. Floyd testified that, over the years, he and Willard had many disagreements, but that whenever Floyd threatened to leave, Willard would urge him to stay, saying that one day the farm would be his.

This cause was tried in chancery, with an advisory jury. The advisory verdict was for the plaintiff. The judgment, also for the plaintiff, specially recited that it was made by the trial judge independently of the verdict. Floyd's first contention on appeal is that the judge erred in granting to the plaintiff a motion *in limine*. This motion involved the wills of August 25 and October 3. The court held that the wills themselves could not be introduced into evidence, but the fact that they were executed could be introduced. The attesting witnesses to the wills could be questioned, but they could not be questioned regarding Willard Crose's testamentary capacity. The defendant-appellant argues that this motion should have been denied because the mental capacity required to make a gift to one's son is the same as the mental capacity required to make a will. (*Johnson v. Lane* (1938), 369 Ill. 135, 15 N.E.2d 710.) Therefore, evidence that the plaintiff had sufficient mental capacity to execute a will, at around the same time the disputed deed was executed, is relevant to the issue of his capacity to make the deed. The plaintiff-appellee argued that the mental capacity required to execute a deed is normally higher than that required for the execution of a will, and that the lower (will) standard will only be applied when the deed reserves a life estate in the grantor, citing, *inter alia, Citizens National Bank of Paris v. Pearson* (1978), 67 Ill. App. 3d 457, 384 N.E.2d 548. The conveyance here was in fee simple, without reservation.

The judge found that the applicable standard was that advocated by the defendant-appellant, but ruled that the attesting witnesses to the will could not testify as to Willard Crose's testamentary capacity because Willard had not died and it would be improper to "probate his will" before such time. Because the judge found for the appellant on the issue of the proper standard by which to gauge mental capacity in a case such as this, we need not reach the issue of whether the standard so chosen was

the correct one. Under the standard chosen by the court, the testimony of the attesting witnesses as to Willard's testamentary capacity would be relevant to an issue in this case. Nevertheless, relevant evidence may be excluded when it would tend to confuse the jury. (E. Cleary & M. Graham, Handbook of Illinois Evidence §403.1 (1979).) The judgment of the trial judge ought to be disturbed only if the exercise of discretion was clearly abused. E. Cleary & M. Graham, Handbook of Illinois Evidence §403.1, at 123 (1979).

■■ We need not reach the issue of whether the trial judge abused his discretion in excluding the evidence. The function of the jury in this equity proceeding was advisory only. The judge explicitly declared that his judgment was independent of the jury verdict. Therefore, "any ruling of the court, on the admission or rejection of evidence during the trial, would not affect the decree which the court finally rendered." (*Peabody v. Kendall* (1892), 145 Ill. 519, 526, 32 N.E. 674.) When the defendant questioned one of the witnesses to the October 3 will, he asked her to read the attestation clause. This was objected to as a violation of the order *in limine*. Before a ruling could be made on the objection, defendant withdrew the question, declaring that his purposes could be achieved through an offer of proof. Such an offer was made, and the plaintiff stipulated that the witnesses would testify, if so allowed, that the attestation clauses reflected their opinions of Willard Crose's capacity at the time the wills were executed. Both the August 25 and October 3 wills are included in the record. It was clear to the chancellor that these wills both contained attestation clauses attesting to the capacity of Willard Crose. The judge was well aware of the significance of these clauses. The absence of their consideration by the jury was not reversible error in this case.

The defendant argues three errors on the instructions tendered to the jury and the proposed instructions withheld from the jury. We need not reach these questions. It would serve no useful purpose and would unduly expand this opinion to discuss the instructions in detail. In a case such as this, where the jury serves in an advisory capacity only "for the purpose of satisfying the conscience of the chancellor" (*DeGraff v. Manz* (1911), 251 Ill. 531, 533, 96 N.E. 516), error in the giving of instructions is not ground for reversal. *Dunn v. Heasley* (1940), 375 Ill. 43, 50, 30 N.E.2d 628.

The plaintiff elicited testimony to the effect that Willard Crose overdrew his checking account on several occasions. The trial judge's ruling that evidence of the overdrafts was out of order and his instruction to the jury to disregard such evidence demonstrates that he did not consider this evidence in arriving at his judgment.

■■ At the close of the plaintiff's evidence, the defendant moved for a directed verdict. The plaintiff offered to withdraw counts II and IV of his

complaint, which alleged fraud and duress. The defendant objected, insisting upon a directed verdict on those issues for lack of proof. The defendant cites us to section 52 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 52), which states that a plaintiff, once trial has commenced, may only dismiss his action or any part thereof, without prejudice, "on motion specifying the ground for dismissal, which shall be supported by affidavit or other proof," should the defendant fail to stipulate to such dismissal. Here the defendant objected to the withdrawal of the counts, and no affidavits or other proof were offered. However, section 52 of the Civil Practice Act is completely inapposite to this procedure. Plaintiffs were granted leave to withdraw counts II and IV with prejudice. (See Supreme Court Rule 273, Ill. Rev. Stat. 1979, ch. 110A, par. 273.) Section 68(4) of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 68(4)) specifically provides for withdrawal of a ground from the jury on account of insufficient evidence. While such a motion for withdrawal is usually made by the defendant, we see no reason why it may not be permitted of a plaintiff. "At any time before final judgment amendments may be allowed on just and reasonable terms * * * changing the cause of action * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 46(1).) "A pleading may be amended at any time, before or after judgment, to conform the pleadings to the proofs * * *." (Ill. Rev. Stat. 1979, ch. 110, par. 46(3).) The trial judge's allowance of the plaintiff's amendment of his pleadings was proper.

On March 6, 1979, the court ordered that all discovery was to be completed before May 1, 1979. Trial was set for the May 14 jury calendar. On May 7, at defendant's request, the case was continued to a later trial calendar. On August 24, 1979, the plaintiff took the deposition of a witness. Defendant did not object. On September 20, pursuant to agreement of the parties, the case was set for trial on October 9. On October 1, 1979, eight days before the commencement of *voir dire* examination, defendant subpoenaed five witnesses for the purpose of taking their depositions. Mailed notice was received by plaintiff's attorneys the next day. Plaintiff moved to quash the subpoenas and the motion was granted on October 3. Defendant's motion to reconsider was denied. Defendant claims error in the denial of this discovery.

Wide discretion is given a trial judge to control the taking of discovery. The power to deny, limit, condition or regulate the taking of discovery so as "[t]o prevent unreasonable annoyance, expense, embarrassment, disadvantage, or oppression" is conferred on trial judges by Supreme Court Rule 201(c)(1) (Ill. Rev. Stat. 1979, ch. 110A, par. 201(c)(1)). (*Anastos v. O'Brien* (1972), 3 Ill. App. 3d 1015, 1021, 279 N.E.2d 759.) The record indicates that the defendant failed to exercise due diligence in taking discovery of witnesses known to him well in

advance of trial. The trial judge did not abuse his discretion in limiting discovery on the eve of trial.

Lastly, the defendant contends that the judgment of the court was not sustained by the evidence. "The chancellor saw the witnesses, and heard their testimony. * * * Where a case is heard by the chancellor and the evidence is all, or partly, oral, it must appear that the decree is against the manifest weight of the evidence or that there is clear and palpable error before a reversal will be had [citation]." (*Wharton v. Meyers* (1939), 371 Ill. 546, 555, 21 N.E.2d 772.) The presence of an advisory jury does not affect this rule. *Dowie v. Driscoll* (1903), 203 Ill. 480, 488, 65 N.E. 56.

The judge had before him expert testimony to the effect that Willard Crose, due to arteriosclerosis, had the capacity to absorb and act upon new information equivalent to that of a five-year-old child. Evidence was presented indicating that Willard was upset by his daughter-in-law on the day he was taken to have the contested deed executed, and that such an upset tended to exacerbate his mental incapacity. Evidence was presented showing that Willard executed a deed prepared by an attorney who was not, and never had been, his attorney, but who was the attorney of his son, Floyd Crose. It is undisputed that Floyd benefited from the deed, and the evidence clearly supports the propositions that Floyd procured the execution of the deed. The record also clearly shows that Floyd was relied upon by his father for the transaction of Willard Crose's business affairs. Willard Crose himself took the stand and testified that he did not recall making a deed to Floyd and that he had no intention of giving Floyd the farm. Floyd's aunt, a disinterested party, testified that Floyd told her that, unbeknownst to Willard Crose, Floyd intended to take Willard to an attorney so that Willard could deed the farm to Floyd.

We cannot say that the decree was against the manifest weight of the evidence or that any reversible error was committed.

For the reason stated herein, the judgment of the Circuit Court of Hancock County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.