S. A. MAXWELL COMPANY, Plaintiff-Appellee, *v.* DeSOTO, INC., Defendant-Appellant.

First District (3rd Division)   No. 78-1273

Opinion filed March 28, 1979.—Modified on denial of rehearing August 8, 1979.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Michael R. Turoff and Arthur L. Klein, of counsel), for appellant.

Richard F. Watt and Michael H. Slutsky, both of Cotton, Watt, Jones, King & Bowlus, of Chicago, for appellee.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff, S. A. Maxwell Company, Inc., a distributor of wall coverings manufactured by defendant DeSoto, Inc., brought this suit to

recover for damages sustained because of defendant's failure to give reasonable notice to plaintiff of its termination as a distributor. A jury returned a verdict for plaintiff in the sum of $26,750; the trial court denied defendant's motion for judgment notwithstanding the verdict and entered judgment on the verdict. On appeal defendant contends that the trial court erred in denying its motions for a directed verdict and for judgment *n.o.v.*; that the court erred in instructing the jury; and that the court erred in the admission of plaintiff's damage evidence.

Plaintiff sold wall coverings made by defendant and other manufacturers to retail outlets such as wallpaper and paint stores. There was no written contract between the parties to this suit, but they had dealt with each other for many years.

Wall coverings are sold through sample books; each book represents a certain line. Plaintiff purchased sample books from defendant and then its salesmen called on retailers, promoted the line, and attempted to sell the books to the retailers. Customers examined the sample books at the retail outlets and selected the wall coverings they wished. Retailers placed orders with plaintiff and the wall coverings were shipped to the retailers from plaintiff's inventory. Sample books ordinarily had a life of two years.

In 1971 plaintiff was distributing six of defendant's wall covering lines. Two of those lines, Famous Flocks and P.D.Q., are the matters in dispute. In December 1971 defendant's regional sales manager, Charles Fink, told plaintiff's president, Lee Emmert, that defendant planned on distributing fabric-backed wall coverings directly to retailers. Defendant considered Famous Flocks such a wall covering. Emmert stated that Famous Flocks was not fabric-backed and that defendant should not terminate plaintiff's distribution of the line. Fink replied that he would consider plaintiff's objections, but made no promise to change defendant's plans.

In February 1972 defendant sent plaintiff its written projected purchase figures for 1972. A notation after the words Famous Flocks read "applicable only if distribution assigned to you." The notation was explained to plaintiff as meaning that defendant was considering distributing the line directly but that a decision had not been made. In June, Fink told Emmert a decision to distribute Famous Flocks had been made final. In a subsequent conversation with Fink's superior, Kenneth Rohl, Emmert was told defendant intended to maintain the status quo.

In August 1972 Fink told Emmert defendant was going to terminate all its lines with plaintiff as the books expired. Fink stated, however, that the matter was important enough to warrant plaintiff's taking it up with Fink's superiors. Emmert thereupon talked to defendant's comptroller who agreed that defendant should not distribute directly. At a meeting

with defendant's comptroller, plant manager and divisional manager, Emmert explained the difficulties defendant would have distributing directly to retailers. After his explanation, Emmert was told by defendant's representatives that things would work out to plaintiff's satisfaction.

In September 1972 plaintiff was informed that all six lines would be terminated as the books expired. In a letter dated October 16, 1972, Fink confirmed a September discussion in which it was stated defendant would not offer the forthcoming P.D.Q. collection to plaintiff. Famous Flocks expired in October 1972, and P.D.Q. expired in January 1973.

In January 1973, at a national convention, Emmert sought to replace defendant's lines. He had difficulty doing so because, in order to satisfy its customers, plaintiff maintained high standards of quality. Plaintiff did not obtain replacement lines until the autumn of 1973 and the spring of 1974. Emmert testified that it was not unusual for plaintiff to first see replacement sample books as little as 30 days before the expiration date of the old books.

Defendant's initial argument is that the trial court erred in not directing a verdict in its favor or in not entering judgment notwithstanding the verdict. It maintains that the notice it gave plaintiff of the termination of the distributorship was reasonable as a matter of law. Plaintiff counters that the reasonableness of the notice was a question to be determined by the jury, and that its decision should not be disturbed.

This matter must be determined under the familiar principle that verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on the evidence could stand. (*Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) Defendant agrees that it had a duty to give timely notice to plaintiff of the termination of its distributorship, but maintains that the notice it gave was timely and reasonable. Both sides agree that a reasonable notice period is one which gives the distributor an opportunity to put its house in order. We believe that, from the evidence adduced, the jury could reasonably find that the notice given by defendant was not reasonable.

■■ Discussions between the parties regarding termination of the distributorship began in December 1971, but the jury could have concluded that defendant did not give adequate, unequivocal notice until September 1972. The jury could have decided that as late as August 1972 defendant, through its comptroller, assured plaintiff that things would work out to plaintiff's satisfaction. Since the Famous Flocks line was to expire in October 1972 and P.D.Q. was to expire in January 1973, the jury could have concluded that notice of termination given in September 1972

was insufficient. We cannot say that such evidence, when viewed in a light most favorable to plaintiff, so overwhelmingly favors defendant that no contrary verdict based on the reasonableness of the notice could stand.

Defendant points out that plaintiff's president testified it was not unusual for him to first see replacement sample books only 30 days before the expiration date of the old books, and therefore it argues a 30-day notice of termination was sufficient. Termination of a distributorship, however, is a far more difficult position for a distributor than making a decision as to whether it should take on a new line. The jury could have determined that plaintiff was entitled to a longer period of time for notice of termination. Plaintiff also offered evidence of its efforts and difficulties in finding replacement lines. Plaintiff's president testified that it began the search for replacements at a national convention in January 1973. Plaintiff was unsuccessful in its efforts for several months because of its concern for distributing quality products and giving good service. We believe the trial court correctly denied defendant's motions for a directed verdict and for judgment notwithstanding the verdict.

Defendant next contends that the trial court committed reversible error in instructing the jury. It singled out one instruction given the jury over defendant's objection and two instructions proposed by defendant which the court refused to give.

■■ Defendant first complains that the giving of the following instruction tendered by plaintiff was error:

"In determining whether or not the notice of termination given plaintiff by defendant was reasonable, you may consider any or all of the following factors:

The percentage of plaintiff's total sales accounted for by defendant's Famous Flocks and P.D.Q. lines;

Plaintiff's actions in anticipation of the continuation of its distributorship of defendant's products;

The transition period needed by plaintiff to make arrangements to replace defendant's Famous Flocks and P.D.Q. lines with the products of another manufacturer or manufacturers in light of the conditions then prevailing in the wall-covering industry."

Defendant argues that it was prejudiced by this instruction because there was no evidence that plaintiff ever took any action in anticipation of the continuation of the distributorship. Plaintiff's president testified, however, about his efforts to persuade defendant not to terminate the two lines in question. Plaintiff also offered evidence of its efforts to promote the two lines. Thus, evidence was offered on plaintiff's action; it was relevant; and the instruction was proper.

■■ Defendant argues that the court's refusal to give the following instruction was error:

"You are further instructed that plaintiff's past efforts on defendant's behalf have no bearing on what constitutes reasonable notice of termination and you are not to consider any such evidence in deciding this case."

The overall duration of the distributorship and plaintiff's past efforts were relevant in that they created expectations in plaintiff as to the continuation of the relationship. They consequently would have a bearing on how much notice of termination plaintiff required. The court properly refused to give the tendered instruction.

■■ The trial court also refused to give the following instruction tendered by defendant:

"If you find in favor of the plaintiff on the issue of liability, then you must consider the issue of damages. Damages must be proved by the plaintiff with a reasonable degree of certainty and must not be based on speculation, guess or conjecture. Damages must also be proved to be the proximate result of defendant's conduct and must not be the result of some other cause or conduct not attributable to defendant."

Other instructions given to the jury instructed it on both proof of damages and on proximate cause. The jury was instructed that the verdict "must be based upon evidence and not upon speculation, guess, or conjecture." Proximate cause was also defined for the jury in instructions given. Where the substance of a refused instruction was given in other instructions, it is not error to refuse the proposed instruction. (*Wood v. Mobil Chemical Co.* (1977), 50 Ill. App. 3d 465, 365 N.E.2d 1087.) The court correctly refused to give the instruction in question.

Defendant also contends that the trial court erred in the admission of plaintiff's damage evidence. Defendant argues that the testimony relating to damages was wholly speculative and improper.

At trial plaintiff offered testimony regarding its projected sales of the Famous Flocks line for the last three months of 1972 and its sales of both Famous Flocks and P.D.Q. for all of 1973. The lost sales for those periods by virtue of the termination of the distributorship were estimated by Lee Emmert on the basis of his experience in the business. Emmert estimated that plaintiff's gross profits on the two lines would have been 40% of its sales. He stated that plaintiff's net profits would have been 50% of its gross profits or 20% of its total sales. Emmert testified that plaintiff would incur little or no expense for overhead on the two lines because the overhead would be taken care of by the other lines. Emmert estimated that plaintiff lost net profits of $15,000 for Famous Flocks and $12,000 for P.D.Q.

Plaintiff's financial statements for the year 1970 through 1975 were introduced into evidence and they indicated that plaintiff's net profit ran between 2% and 5% of its net sales. Plaintiff's books were not kept so as to reveal either gross or net profit for an individual line. Each line bore its proportional share of overhead.

In 1971 and 1972 plaintiff purchased 354 wall-covering racks from defendant. Plaintiff was to sell these racks to retailers as a means of increasing sales. Plaintiff paid defendant $45 for each rack and sold them to retailers for $22.50 each. The price to the retailers included one year of replacements along with the assurance that samples would be kept current. Prior to the termination of the distributorship, plaintiff sold 300 racks. It was unable to sell the remaining racks because defendant no longer furnished replacements. Defendant refused to take back the racks or to compensate plaintiff for the $2,250 loss on the racks.

The parties here agree that the loss of net profits is an appropriate measure of damages. It is also undisputed that a recovery may be had where the probable profits can be estimated with reasonable certainty or a fair degree of probability. (*Barnett v. Caldwell Furniture Co.* (1917), 277 Ill. 286, 115 N.E. 389.) Notwithstanding the liberal rule with reference to the proof of damages it is necessary to prove net profits in order to properly estimate the loss suffered. *Henry's Drive-In, Inc. v. Anderson* (1962), 37 Ill. App. 2d 113, 185 N.E.2d 103.

■■ In the present case, we do not believe the jury's award of damages was based upon competent evidence relating to the net profits attributable to the two lines. A net profit is the difference between gross receipts and the costs of running the business. Plaintiff attempted to prove that it had no additional costs by claiming that the overhead on the two lines in question was covered by its other lines. Consequently, it claimed that it would incur little or no expense in handling the two lines. Plaintiff's books do not support this conclusion. Moreover, the statements of plaintiff's president to the effect that the two lines would generate little or no additional overhead expenses are merely undocumented conclusions. Thus, in the absence of additional evidence supporting Emmert's conclusions, we believe the jury was improperly allowed to speculate as to whether a proportional share of overhead expenses should be borne by Famous Flocks and P.D.Q. The cause must be remanded for a new trial on the issue of damages to determine, in addition to the other elements of damages, which overhead expenses, if any, will increase as a result of increased sales and must therefore be proportionately deducted in determining plaintiff's lost net profits.

■■ We find, however, that the sum of $2,250 awarded to plaintiff for the loss arising from the 50 display racks was proper. We find also that plaintiff's inclusion of the year 1973 in its damages computation was

proper since it was the approximate length of time it took plaintiff to obtain replacement lines.

For the reasons stated, the finding in favor of plaintiff is upheld. The award of damages for the racks is also upheld. Therefore, the judgment of the circuit court of Cook County for plaintiff in the amount of $2,250 is affirmed. The balance of the judgment is vacated, and the cause is remanded for further proceedings not inconsistent with this holding on the issue of damages only.

Affirmed in part; vacated in part and remanded.

SIMON, P. J., and RIZZI, J., concur.