BARTON CHEMICAL CORPORATION, Plaintiff-Appellee, *v.* PENNWALT CORPORATION, Defendant-Appellant.

First District (1st Division)    No. 81-941

Opinion filed May 17, 1982.

Steven D. McCormick and Stanley L. Ferguson, both of Kirkland & Ellis, of Chicago, for appellant.

Allen C. Engerman and Barry A. Erlich, both of Engerman, Erlich & Berman, Ltd., of Chicago, for appellee.

JUSTICE McGLOON delivered the opinion of the court:

Barton Chemical Corporation (Barton) brought an action against Pennwalt Corporation (Pennwalt), alleging that Pennwalt overcharged on its sales of industrial chemicals to Barton during 1976. Barton argued that its contract with Pennwalt was a fixed-price contract. Pennwalt maintained that the contract was price adjustable. The trial court, sitting without a jury, awarded Barton damages of $65,000, the difference between the contract price and market price which Barton paid to Pennwalt and another chemical company during 1976 for chemicals for use in its internal manufacturing business. In addition, the trial court awarded Barton damages of $27,723 for hypothetical lost profits on additional chemicals Barton claims it would have purchased and resold if the agreed upon prices had been charged. Pennwalt now appeals. Barton cross-appeals.

On appeal, Pennwalt argues that: (1) the trial court's ruling that Pennwalt was required to charge 1975 prices for sales to Barton during 1976 was against the manifest weight of the evidence; and (2) the trial court erred in awarding Barton damages for hypothetical lost profits. In its cross-appeal, Barton claims that the trial court should have based its damages award on the maximum quantities of chemicals Barton was entitled to purchase under the contract.

We affirm in part, as modified, and reverse in part.

Barton purchases industrial chemicals for use in manufacturing bleach and other household and automotive products. Additionally, it purchases chemicals and resells them in bulk. Barton began purchasing

chemicals from Pennwalt in 1970. In December of 1973, Barton and Pennwalt entered into written contracts for the sale of liquid chlorine and caustic soda for the calendar years 1974 and 1975.

On October 21, 1974, Pennwalt's regional sales manager, Robert Rowe, wrote a letter to Barton's president, Jerome Engerman, confirming that the contract would be extended through 1976. The letter stated that on November 1, 1974, Pennwalt would raise the price of liquid chlorine to $92.50 per ton and caustic soda to $100 per ton. The quantity terms for chlorine and soda were raised to 3,000 tons per year and 3,800 tons per year respectively. Further, the letter stated that "all other terms and conditions of our current contract [will remain] unchanged [for 1976]." In the contract referred to in the letter, a clause giving Pennwalt the right to adjust prices had been stricken.

In January of 1976, Pennwalt refused to sell chemicals to Barton at the prices set forth in the October 21 letter. Barton filed suit against Pennwalt in the circuit court of Cook County but continued to purchase chemicals from Pennwalt throughout the year. Pennwalt charged Barton $122 per ton for chlorine throughout 1976. For soda, Pennwalt charged between $139.50 and $160 during 1976. Barton purchased some of its chlorine from another chemical company, F.M.C., for $115 per ton. In 1976, Barton did not resell any of its chemicals in bulk.

Simply stated, the trial court ruled that the parties had agreed to a firm price provision and Pennwalt, therefore, should have charged Barton 1975 prices for deliveries during 1976. The trial court awarded Barton a total of $92,723 in damages. Sixty-five thousand dollars ($65,000) of the award represents the actual tonnage quantities of liquid chlorine and caustic soda purchased during 1976 from Pennwalt and F.M.C. multiplied by the difference between the prices charged by Pennwalt and F.M.C. during 1976 and the prices quoted in the letter of October 21, 1974. The remaining $27,723 of the award represents the profits Barton claimed it would have made on resales if Pennwalt had charged the agreed upon price. The trial court computed the average percentage of liquid chlorine and caustic soda resold during the previous five years, multiplied the average annual percentage by the actual tonnage quantities purchased by Barton in 1976 and awarded as damages the difference between the contract prices and market prices for the quantities purchased. Pennwalt appeals. Barton cross-appeals only with respect to the amount of damages awarded.

First, Pennwalt argues that the trial court's ruling that Pennwalt was required to charge 1975 prices for chemical sales during 1976 was against the manifest weight of the evidence. Pennwalt claims that the parties' past dealings show that they intended that there would be price adjustments during 1976. It maintains that Barton is entitled to no damages. Barton

argues that under the terms of the 1976 agreement, it was not required to agree to any price increases. In its cross-appeal, Barton claims that the trial court should have based its award of damages on the maximum quantity amounts available under the contract, rather than on the amounts it actually purchased from Pennwalt and F.M.C. during 1976.

In the October 21, 1974, letter from Pennwalt's regional sales manager to the president of Barton, the terms of the agreement for 1975 shipments of liquid chlorine and caustic soda were set forth. This letter also stated that the contract terms would be extended through 1976. The letter provided that Pennwalt would charge $92 per ton for liquid chlorine and $100 per ton for caustic soda. Further, it provided that Barton could purchase a maximum of 3,000 tons per year of liquid chlorine and 3,800 tons per year of caustic soda. Additionally, the letter specifically stated that "all other terms and conditions of our current contract remain unchanged." The contract referred to in the letter had been entered into in January of 1974. In that contract, a clause giving Pennwalt the right to raise prices had been stricken.

Testimony given by witnesses at trial indicates that because of rapidly fluctuating prices in the chemical industry, sales agreements in the industry are characteristically "loose" agreements. Prices often are adjusted to reflect market conditions. On numerous occasions between 1970 and 1975, the president of Barton had voluntarily agreed to price increases when he deemed them appropriate. In fact, during 1974 Barton twice accepted price increases despite the firm price term contained in the contracts.

■■ Because of their prior business dealings, Pennwalt assumed that Barton would continue to agree to its suggested price increases. Because the price adjustable clause had been stricken from the contract, however, it was Barton's prerogative to refuse to purchase the chemicals at the higher prices. The fact that Barton in the past had agreed to price adjustments did not obligate it to agree to increases during 1976. We believe that Pennwalt was bound by the terms of its agreement to deliver Barton's requirements at the agreed upon prices. The trial court's ruling that Pennwalt was required to charge 1975 prices for deliveries of chemicals during 1976 was not against the manifest weight of the evidence.

Second, Pennwalt argues that the trial court erred in awarding Barton damages for hypothetical lost profits. The trial court accepted Barton's argument that if Pennwalt had sold the chemicals to Barton at the contractually agreed upon prices, Barton would have purchased and resold additional chemicals. The trial court computed the percentage of liquid chlorine and caustic soda which Barton had purchased from Pennwalt for resale purposes in the previous five years. It then multiplied the average annual percentage by the quantities Barton purchased in 1976 and

awarded as damages the difference between the contract prices and average market prices for the quantities purchased. Barton urges that the trial court should have applied the damage formula to the maximum number of tons of chemicals that Barton had been entitled to purchase under the contract.

■■ We reject Barton's suggestion that the computation of damages should have been based on the maximum allowable tonnage. The parties' contract was a partial requirements contract under which Barton was not obligated to purchase any chemicals. Barton had been purchasing chemicals from Pennwalt for five years. In none of these five years did Barton purchase the maximum tonnage available. In fact, in 1975 it purchased less than 20 percent of the contract maximum.

In 1976, all of the liquid chlorine and caustic soda which Barton purchased was used by Barton for its internal manufacturing process. None was resold in bulk. Barton's vice-president of sales, John Deamer, testified that the company would have purchased and resold a substantial amount of chemicals in bulk if Pennwalt had not refused to supply the chemicals at the contract prices. A review of the record indicates that Barton made significant chemical resales in only one year of its corporate existence. In 1974, approximately two-thirds of the tonnage of liquid chlorine and caustic soda which Barton purchased was resold in bulk quantities. In 1975, Barton resold less than 10% of the quantity of chemicals it had resold in 1974.

■■ Under Illinois law, lost profits may be an appropriate item of damages where the amount can be determined with reasonable certainty. (See *Evra Corp. v. Swiss Bank Corp.* (N.D. Ill. 1981), 522 F. Supp. 820; *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494.) Given the fact that Barton's resale business varied greatly from year to year, it is impossible to determine whether Barton would have resold chemicals during 1976 if Pennwalt had sold said chemicals at the contract prices. Barton produced no proof of preexisting resale contracts or orders. Nor did Barton produce any evidence regarding the expenses it would have incurred in reselling the product. Without such evidence, it is impossible for us to determine with reasonable certainty the amount of profits which Barton would have realized in its resale business during 1976. We find, therefore, that an award of damages for hypothetical lost profits was improper.

We now turn to the question of the amount of damages to which Barton is entitled. The agreement between the parties, as stated in the letter of October 21, 1974, was that Pennwalt would sell liquid chlorine at $92.50 per ton and caustic soda at $100 per ton. Pennwalt delivered 440 tons of chlorine to Barton and charged $122 per ton. Barton also purchased 380.6 tons of chlorine from F.M.C. at $115 per ton.

■■ During 1976, Pennwalt charged Barton three different prices for caustic soda. Barton purchased 34.89 tons of soda at $160 per ton; 234.55 tons at $140 per ton; and 591.21 tons at $139.50. Under section 2—713(1) of the Uniform Commercial Code, Barton is entitled to the differences between the prices it actually paid and the contract price for each of its purchases. (Ill. Rev. Stat. 1979, ch. 26, par. 2—713(1).) Barton therefore is entitled to damages in the amount of $21,543.50[1] on its purchases of liquid chlorine and $34,828.20[2] on its purchases of caustic soda, for a total of $56,371.70. In addition, Barton is entitled to costs plus interest. The interest is to run on the amount of $56,371.70 from March 15, 1981, the date on which the original order was entered.

In sum, we find that Barton is entitled to damages in the amount of $56,371.70, the difference between the contract prices and market prices for the quantities of liquid chlorine and caustic soda actually purchased during 1976. In this regard, the trial court award is affirmed, as modified. Additionally, we find that Barton was entitled to no damages for its hypothetical losses in its resale business. On this issue, the trial court's ruling is reversed.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed in part, as modified, and reversed in part.

Judgment affirmed in part, as modified, and reversed in part.

CAMPBELL, P. J., and GOLDBERG, J., concur.

---

[1] Purchases from Pennwalt:

| | | |
|---|---|---|
| 440 x ($122 - $92.50) | = | $12,980.00 |
| Purchases from F.M.C.: | | |
| 380.6 x ($115 - $92.50) | = | 8,563.50 |
| | | $21,543.50 |

[2] Purchases from Pennwalt:

| | | |
|---|---|---|
| 34.89 x ($160 - $100) | = | $ 2,093.40 |
| 234.55 x ($140 - $100) | = | 9,382.00 |
| 591.21 x ($139.50 - $100) | = | 23,352.80 |
| | - | $34,828.20 |