MADISON ASSOCIATES, Plaintiff-Appellee, v. HARVEY B. BASS, Defendant-Appellant.

First District (3rd Division) No. 86—1164

Opinion filed June 17, 1987.—Rehearing denied August 12, 1987.

528

William J. Harte, Ltd., of Chicago (William J. Harte and John B. Austin, of counsel), for appellant.

Isham, Lincoln & Beale, of Chicago (Donald C. Clark, Jr., of counsel), for appellee.

PRESIDING JUSTICE McNAMARA delivered the opinion of the court:

Plaintiff Madison Associates, a landlord, brought this action to enforce statutory and contractual remedies against its tenant, Harvey B. Bass, seeking back rent and interest, possession of the leased offices, and attorney fees. Defendant subsequently filed a counterclaim, alleging negligent repairs, breach of contract, and fraudulent inducement to execute a settlement agreement. The trial court entered summary judgment for plaintiff on the fraud counterclaim and dismissed the negligent repairs and breach of contract counts in the counterclaim. At the conclusion of a jury trial, the trial court directed verdicts in favor of plaintiff for rent in the amount of $272,318.53 and for possession. The jury returned a verdict for plaintiff on the issue of attorney fees under the lease and awarded plaintiff $12,634.92. The trial court entered judgments on the verdicts. Defendant appeals from the award of summary judgment on the fraud count of the counter-

claim, the directed verdict for rent, and the jury verdict for attorney fees.

On appeal, defendant contends that the trial court abused its discretion in denying his request for a continuance; that the trial court erred in entering summary judgment on the counterclaim's count which alleged fraudulent inducement to enter into a settlement agreement; and in granting plaintiff's motion *in limine* which prohibited reference to the circumstances surrounding the June 1985 settlement agreement; and that the trial court's erroneous entry of summary judgment on the fraud count precluded defendant from recovering punitive damages and attorney fees. Defendant also contends that the trial court erred in directing a verdict in favor of plaintiff for rent; that the jury verdict for attorney fees should be set aside; that the trial court induced defendant's failure to present evidence to support his claim for lost profits; and that the trial court erred in denying defendant's motion to conform the pleadings to the proof by adding claims for breach of covenant of quiet enjoyment and breach of duty to repair space.

In August 1980, defendant, an attorney, signed a 10-year lease for a suite of offices in Three First National Plaza in Chicago. The lease provided for monthly rent and interest for past due rent. The tenant would pay reasonable attorney fees incurred by plaintiff in enforcing the lease. From the beginning of defendant's occupancy in April 1982 until June 1985, defendant withheld virtually all rent payments because of leaks in the roof and heating and air-conditioning problems.

The parties entered into a settlement agreement dated June 3, 1985. Under the agreement, defendant was to pay $353,366.91 for rent and miscellaneous charges, with a rent abatement of $158,210.01, leaving a balance of $195,156.90. Defendant was to pay plaintiff $46,932.17 immediately. He was to pay the balance of $148,224.73 plus 12% compounded interest in monthly installments of $3,297.18, along with the regular monthly rent, beginning on June 1, 1985. In the event of default, the entire unpaid balance of back rent and interest would immediately come due. If plaintiff brought suit, defendant would pay reasonable fees and costs.

Defendant did not make the initial payment of $46,932.17. He also did not make either the back rent payments of $3,297.18 or the regular monthly rent payments for June through September 1985. On September 4, 1985, plaintiff gave defendant written notice of the deficiencies and requested payment. After defendant failed to pay the monthly rent for October, on October 9, 1985, plaintiff served defendant with a five-day notice and demand for accelerated payment.

Defendant then paid his regular rent and back rent payments for October and November, but did not pay the June through September payments or the initial $46,932 payment. As of December 10, 1985, the December payments had not been made.

On December 10, 1985, plaintiff brought this action to recover possession of the premises and past due rent plus interest under the Forcible Entry and Detainer Act (Ill. Rev. Stat. 1985, ch. 110, par. 9—209), along with attorney fees under the lease agreement.

On December 27, 1985, defendant, acting *pro se*, filed his answer and request for a jury trial. After two continuances, the case was set for trial on January 21, 1986. Both parties answered ready for trial and seven jurors were selected. The trial court granted defendant a one-day continuance to respond to plaintiff's three motions *in limine* and a motion to amend the complaint to attach a copy of the amended lease and agreement.

On January 22, defendant requested a mistrial so that he could obtain counsel and have additional time to respond to the motions. After extensive discussion, counsel withdrew his request, and the parties agreed that defendant would respond to the motions the following day, have the court hear arguments on January 24, and choose the remaining jurors on January 28. The court acknowledged the parties' agreement and stated that it would enforce the agreement in order to be fair to both sides and cautioned that no further continuances would be granted.

On Friday, January 24, defendant appeared with counsel, who filed appearances and sought another continuance on the grounds that the quick hearing contemplated by the Act was unnecessary because defendant was willing to give up possession; that defendant was an attorney but had no background in this area of law; and that because the amount of damages sought and the significant number of issues, counsel needed more time to prepare before trial. The court denied the request for a continuance, but granted defendant's request for leave to file a counterclaim the following week.

On January 27, defendant filed a counterclaim seeking damages for water infiltration occurring both before and after the June 1985 agreement was signed and asserting that plaintiff had fraudulently induced him to execute the settlement agreement and amend the lease. Defendant alleged that at the time he signed the agreement, plaintiff promised him that he would not have any roof leaks in the future. Count I alleged fraud; count II alleged negligent repairs; and count III alleged breach of contract. The counterclaim was subsequently amended to seek damages for roof leaks and heating and cooling

problems occurring only after June 1985. Defendant sought compensatory damages, including lost profits and attorney fees, and $250,000 in punitive damages.

Plaintiff filed a motion to strike and dismiss the counterclaim and a motion for summary judgment as to the counterclaim. The court found that defendant had released and waived all claims he might have incurred due to water infiltration prior to June 3, 1985, the date of the settlement agreement and first amendment to the lease. The court granted plaintiff's motion *in limine* to exclude evidence of events leading up to the June 1985 settlement agreement. The court also dismissed without leave to amend counts II and III of the counterclaim.

The trial court later entered summary judgment for plaintiff on defendant's counterclaim alleging that he had been fraudulently induced to execute the settlement agreement and amended lease. The court denied defendant's request to certify its order granting summary judgment for interlocutory appeal. The court also denied defendant's request for a mistrial and a new judge. On Thursday, January 30, 1986, the jury began hearing testimony.

Howard Callaway, a vice-president of the company acting as the building's managing agent, testified for plaintiff. Callaway denied telling defendant prior to June 1985 that he would not have leakage problems in the future. Callaway told defendant that repairs had been made and that he believed the leaks were fixed.

Richard J. Loeber, an employee of the building manager, testified for plaintiff regarding the records of defendant's complaints after June 1, 1985. There were seven complaints of cold temperatures. Four notations by building personnel showed the temperature was "fine": temperature at 71 degrees, thermostat at 73 degrees; thermostat changed; and thermostat at 73 degrees, 74 degrees. Regarding five complaints about heat, the building personnel notations showed: 72.5 degrees; 76/77 degrees; thermostat lowered from 76 to 71 degrees; 77 degrees; 78 degrees. After Loeber's testimony, plaintiff rested its case, and the court denied defendant's motion for a directed verdict.

Robert Guzman, an iron worker, testified for defendant regarding repairs he made to the building's roof in late 1984. The trial court sustained objections to Guzman's testimony, finding it violated the court's ruling excluding evidence of matters prior to June 1, 1985. An offer of proof was later made that Guzman would testify that as of December 1984 the roof repairs were substantially incomplete. The court found that pre-June 1985 conditions were irrelevant and that

the offer of proof was factually insufficient.

Callaway was then called by defendant as an adverse witness. He testified that roof repairs were made in 1984, but no repairs were made after that date. Callaway characterized heating, ventilation and air-conditioning problems after June 1985 as minor. The court sustained plaintiff's objections to Callaway's testimony regarding events prior to June 1985.

Plaintiff objected to defendant's presenting Lloyd Wevang as an expert witness. Defendant had failed to identify Wevang as an expert pursuant to Supreme Court Rule 220, and the court sustained plaintiff's motion to disqualify Wevang.

John D. Hayes, an attorney, testified for defendant regarding lost business profits. The court sustained plaintiff's objections to any testimony regarding working conditions prior to June 1985.

Defendant attempted to make an offer of proof regarding what Robert Fink, an engineer, would testify to in regard to matters arising prior to June 1985. The court held that offers of proof could only be made as to matters which were dealt with in open court. Because there was no evidence before the court regarding Fink, no offer of proof was allowed.

Defendant testified regarding the improvements he made in the leased office suite. Some of the walls and part of the suite's roof were constructed of glass. The roof leaked, causing damage to the offices. Moreover, the heating, ventilation and air-conditioning did not work properly. Defendant complained of water infiltration and damage before and after signing the settlement agreement in 1985.

On September 13, 1985, defendant wrote to Callaway, stating that he was satisfied with the heating, ventilation and air-conditioning system. Defendant testified, however, that problems with the system continued. Workmen attempting to make repairs in July and August 1985 disrupted defendant's law practice. Plaintiff also posted a security guard in defendant's waiting room between May and August 1985. Defendant also described personal property damage caused by workmen.

Defendant testified further that his business was frequently interrupted and he often had to work at home. He was prevented from settling personal injury and matrimonial cases. His preparation for trial was hindered. Defendant listed nine cases in which he was forced to relinquish present clients and turn away additional clients. Since the inception of the present suit, he had only accepted one new case.

Rosemary Bazan, defendant's officer manager and secretary, testified that on September 23, 1985, Michael Rosenthal, an attorney in

defendant's suite, called out that water was pouring onto his word processor from the ceiling. Bazan stated that there was a large amount of water. Regarding the same incident, defendant testified that water gushed from the ceiling, filling two large garbage cans and a plastic bin. Rosenthal testified that a leak dripped onto his desk and computer terminal, filling a quart of a gallon container once or twice. The building records showed a complaint made on September 23 for a leaking window and ceiling. Because there was conflicting testimony as to which office was involved, defendant was not permitted to introduce photographs of the damage.

Bazan also testified that her office was sometimes too cold to work in and that defendant's office was even colder. Bazan testified that other areas of the suite were very hot. Bazan did not call the building manager every time there was a problem. She was embarrassed to call because she had already called so many times.

Albert H. Marrow, a client of defendant's, testified that in October and November 1985 moisture was on the windows of defendant's office, and water ran down the wall. During September and October, the conference room was 80 to 85 degrees, while defendant's office was around 60 degrees.

After the defense rested, plaintiff moved for a directed verdict for $272,318.53 based on rent owed under the lease and the settlement agreement. Defendant conceded that he owed $148,224.73 under the settlement agreement, but argued that the jury should decide the issue of whether the offices were untenantable after June 1, 1985. The court found that, as to rent owing from June 1985, there was insufficient proof of untenantability. Defendant's testimony regarding the purchase price of permanent improvements was insufficient proof of value. Concerning untenantability after June 1985, the court found Morrow's and Bazan's testimony regarding temperatures to be speculative. The court granted plaintiff's motion for a directed verdict on the claim for back rent and interest in the amount of $272,318.53.

Initially defendant stipulated to possession. However, in response to plaintiff's motion for a directed verdict on the possession issue, defendant withdrew his stipulation. The trial court directed a verdict on the possession claim, and defendant does not appeal from that order.

The court denied defendant's renewed motion to amend his pleadings to conform to the proof by adding plaintiff's breach of covenant of quiet enjoyment and breach of duty to repair the space.

Regarding defendant's counterclaim, the trial court ruled that defendant did not meet his burden of proof concerning damages in

connection with the leasehold improvements. The court also found that defendant failed to present competent testimony regarding lost profits. The court dismissed without leave to amend count II for negligent repairs and count III for breach of contract.

The court found that there was no evidence to support defendant's fraud cause of action. As a result, the court found there was no evidence to support the counterclaim for punitive damages. Finally, the court found that there was no fraud, contractual, or statutory basis for awarding attorney fees to defendant.

The court allowed the jury to determine the reasonableness of the attorney fees which plaintiff claimed under the lease. The jury returned a verdict for $12,632.22 in attorney fees for plaintiff, and judgment was entered on the verdict.

■ Defendant first contends that the trial court abused its discretion, and that he was prejudiced, by the denial of defendant's requests for additional continuances.

Section 2—1007 of the Code of Civil Procedure provides that "on good cause shown, in discretion of the court and on just terms, additional time may be granted for the doing of any act" prior to judgment. Supreme Court Rule 231 provides that no motion for a continuance shall be heard after the cause has been reached for trial, unless a sufficient excuse is shown for the delay. The moving party must give especially grave reasons for a continuance once the case has reached the trial stage. (*Teitelbaum v. Reliable Welding Co.* (1982), 106 Ill. App. 3d 651, 435 N.E.2d 852.) The exercise of the trial court's discretion in granting or denying a continuance will not be disturbed absent a manifest abuse of such discretion or a probable injustice which is apparent in the record on appeal. *In re Estate of Cohn* (1981), 95 Ill. App. 3d 204, 419 N.E.2d 951.

Defendant argues that the agreed schedule "was extracted in a context of considerable pressure by Madison and the court to proceed to trial." Defendant characterizes his agreement to a trial schedule as a "momentary yielding." The record belies defendant's claim.

After seven jurors were selected, plaintiff presented several motions which defendant stated he could answer by the following day. On Wednesday, January 22, defendant stated that he had answered one motion in writing but could respond to the other motions orally. He agreed that none of the motions constituted a surprise. Defendant, however, requested additional time to obtain counsel and to answer the motions. The trial court proposed that the partial jury be dismissed so that the motions could be considered without undue rushing. After extensive discussions, the parties chose not to accept the

court's proposal. The parties informed the court that defendant elected to respond to the motions by Thursday, January 23; that arguments on the motions could be heard on Friday; and that jury selection could begin on the following Tuesday. Defendant added that he would agree to keep the seven jurors who had already been chosen.

The court then cautioned defendant: "Mr. Bass, think carefully. It is you that I am addressing because they seem ready *** but you seem to hedge a little bit on the need for an additional counsel." The court expressly stated that, "Once you agree about Tuesday, you can get an additional lawyer, but I don't want the lawyer to come in and say he needs more time because he was brought in Tuesday." Defendant replied that he understood. On Friday, January 24, new defense counsel appeared and requested a continuance, which the court denied.

■ In setting a trial schedule, the court took into consideration the expressed wishes of both the parties and did not force the case to trial unreasonably or unjustly. The court set a schedule according to the wishes of the attorneys. It is not an abuse of discretion, after most of the jury had been chosen and repeated opportunities to postpone the matter were offered to defendant, to require the parties to follow the agreed upon schedule.

■ Defendant argues that he was prejudiced due to the unavoidably late addition of new counsel. On January 21, defendant answered that he was ready for trial and announced after that he would represent himself. The substitution of attorneys after the commencement of trial does not constitute good cause for granting a continuance. (*In re Marriage of Yakin* (1982), 107 Ill. App. 3d 1103, 436 N.E.2d 573; *Schroeder v. Busenhart* (1971), 133 Ill. App. 2d 180, 272 N.E.2d 750, cert. denied (1972), 405 U.S. 1017, 31 L. Ed. 2d 479, 92 S. Ct. 1293.) Furthermore, defense counsel conducted defendant's case in a vigorous and thorough manner and thus the denial of the motion for a continuance because of the additional or new counsel did not prejudice defendant and was not an abuse of discretion. See *Schroeder v. Busenhart* (1971), 133 Ill. App. 2d 180, 272 N.E. 2d 750.

■ Defendant also urges that he needed a continuance in order to pursue discovery. The trial court has wide discretion in controlling the taking of discovery. (*Crose v. Crose* (1980), 91 Ill. App. 3d 216, 414 N.E.2d 872.) Where the discovery could have been accomplished earlier, the trial court need not grant a continuance. *Harris Trust & Savings Bank v. Chicago College of Osteopathic Medicine* (1983), 116 Ill. App. 3d 906, 452 N.E.2d 701.

■ The record shows that in response to defendant's request, the

trial court ordered plaintiff to produce voluminous records during trial, including records concerning every tenant in the building. In addition, defendant sought no discovery from the filing of the complaint until after the jury had been sworn. Finally, the trial court told defendant that he could present any additional requests for discovery at any time before the case went to the jury. Defendant never submitted such requests. We cannot say that the trial court abused its discretion in denying defendant's requests for a continuance on the basis of defendant's need of additional discovery.

■ Defendant also argues that the trial court abused its discretion in denying his request for a continuance when he repeatedly offered to relinquish possession of the premises, thus eliminating the need to follow an expedited schedule under the Forcible Entry and Detainer Act. Defendant portrays plaintiff's insistence on trying the issues of rent and possession together as "a smoke screen blown up by Madison in order to proceed to the money issues with maximum tactical advantage."

While defendant offered to relinquish possession, the offer was contingent on plaintiff's agreement to revise the trial schedule to defendant's convenience. Plaintiff was not required to accept such an offer, under either general principles of compromise and settlement or the provisions of the statute (Ill. Rev. Stat. 1985, ch. 110, par. 9—101 et seq.).

Defendant urges us to consider the question of whether the main purpose of the forcible entry and detainer action, i.e., determining the parties' rights to possession of the property, is defeated once a tenant vacates the premises. (See, e.g., Hale v. Ault (1980), 83 Ill. App. 3d 78, 403 N.E.2d 635; Kowalski v. Burman (1957), 13 Ill. App. 2d 332, 142 N.E.2d 159.) This issue is not before us because defendant did not in fact relinquish possession to plaintiff prior to or during the trial. Instead, he expressly withdrew any offer or proposed stipulation regarding relinquishing possession. We conclude that the trial court did not abuse its discretion in denying defendant's request for a continuance.

■ Defendant next contends that the trial court erred in granting summary judgment on the fraud count of the counterclaim. Plaintiff counters that the settlement agreement is valid and binding as to all matters arising prior to June 1985. Defendant's counterclaim alleged that plaintiff induced defendant to sign the settlement agreement, and to continue occupying the premises, by falsely representing that the relevant repairs had been made by June 1985. The trial court found that there was no evidence of fraudulent inducement to execute

the settlement agreement.

In a related argument defendant attacks the order granting plaintiff's motion *in limine*, which prevented defendant from introducing evidence of events prior to June 1985. Defendant argues that this order foreclosed him from proving the plaintiff had knowledge, at the time the agreement was signed, that the roof repairs were not properly completed and from proving that he would not have settled for $158,210.01 in rent credit if he had known that repairs were not made. Defendant points to the trial court's "active acquiescence in summarily and unnecessarily forcing Bass to trial cut off any opportunity he had to challenge the validity of the settlement agreement or to dispute the adequacy of the settlement amount."

Summary judgment is proper where no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. (Ill. Rev. Stat. 1985, ch. 110, par. 2—1005; *Comisky v. Farm Dealer Supply, Inc.* (1981), 99 Ill. App. 3d 807, 426 N.E.2d 16.) In the present case, summary judgment was entered as to defendant's counterclaim alleging that plaintiff fraudulently induced him to sign the settlement agreement. A motion for summary judgment in accordance with a settlement may be entered under certain circumstances. See *Hollobow v. Energy Resources Corp.* (1981), 94 Ill. App. 3d 331, 418 N.E.2d 924.

■ Initially we note the general rule that settlement agreements are favored. (*McCracken Contracting Co. v. R. L. DePrizio & Associates, Inc.* (1984), 122 Ill. App. 3d 680, 462 N.E.2d 682.) If the agreement was fairly and deliberately made, it will not easily be set aside or disturbed. (*Kalman v. Bertacchi* (1978), 57 Ill. App. 3d 542, 373 N.E.2d 550.) Defendant does not allege that he failed to understand the meaning of the agreement, or that he was misled as to its meaning. (See *McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 417 N.E.2d 705.) The record shows that this agreement was entered into only after extensive negotiations. Moreover, at the time the settlement agreement was executed, defendant was, or should have been, fully aware of the nature and extent of his injuries up to that date. (See *McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 417 N.E.2d 705.) Defendant had ample time to seek opinions regarding the nature and extent of damages he had suffered, or consult legal counsel regarding possible legal remedies. Following the relevant general principles cited, the record established that the agreement was fairly and deliberately made, and thus it will not easily be set aside.

■ Generally, a valid settlement agreement operates as a bar to all included and prior causes of action. (*Keim v. Kalbfleisch* (1978), 57

Ill. App. 3d 621, 373 N.E.2d 565.) Once plaintiff establishes the existence of the document, legal and binding on its face, the burden shifts to defendant to show that it is invalid. (*McComb v. Seestadt* (1981), 93 Ill. App. 3d 705, 417 N.E.2d 705.) The settlement agreement is not conclusive as to matters arising subsequent to the agreement. Unless impeached for mistake or fraud, a settlement agreement is conclusive on the parties as to matters fairly considered and intended to be included within its terms. *Thatcher v. Eichelberger* (1981), 102 Ill. App. 3d 231, 429 N.E.2d 1090; *Knoll v. Swanson* (1968), 92 Ill. App. 2d 398, 234 N.E.2d 543.

Under the agreement, defendant released plaintiff from any and all claims or losses incurred as a result of water infiltration or related damages for the premises leased. On its face, then, the agreement appears to be legal and binding as to damages incurred up to the date of the agreement in June 1985. If defendant cannot show fraud in the inducement, the settlement agreement will be conclusive as to matters arising before the agreement.

Defendant accepted, as rent abatement and as "payment for water infiltration or related damages allegedly caused by Madison Associates, the sum of $158,210.01." The agreement makes no reference to future repairs. Defendant urges us to rewrite the agreement to include plaintiff's alleged promise that no further problems would arise in the future. We decline to do so.

■■ The pleadings and defendant's affidavit fail to set forth any facts from which fraud can be inferred. A settlement agreement will not be disturbed where proper grounds for setting it aside are not included in the allegations of the pleadings. (*Metropolitan Life Insurance Co. v. Schwarz* (1941), 310 Ill. App. 205, 33 N.E.2d 934.) A cause of action for fraud must establish the misrepresentation of a material fact which was made for the purpose of inducing the other party to act; that the party making the statement knew or believed it to be false; that the party to whom the statement was made had a right to rely upon it and did so; and that reliance led to the party's injury. *Glazewski v. Coronet Insurance Co.* (1985), 108 Ill. 2d 243, 483 N.E.2d 1263; *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 441 N.E.2d 324.

Defendant has failed to show that plaintiff misrepresented a material fact. Defendant states in an affidavit that plaintiff told him in early 1985 that the water problems had been repaired and that he would experience no further problems. More leaks have occurred, however, since he signed the agreement. In contrast, Callaway's affidavit states that plaintiff never represented that defendant would not

experience problems in the future. While plaintiff's affidavit is supported by the language of the agreement, defendant's affidavit is not similarly supported.

Furthermore, as a matter of law, even if plaintiffs had made promises regarding the future, such promises would not be upheld. Statements regarding future events or circumstances are not a basis for fraud. (*Gross Valentino Printing Co. v. Clarke* (1983), 120 Ill. App. 3d 907, 458 N.E.2d 1027; *3700 S. Kedzie Building Corp. v. Chicago Steel Foundry Co.* (1959), 20 Ill. App. 2d 483, 156 N.E.2d 618.) Such statements are regarded as mere expressions of opinion or mere promises or conjectures upon which the other party has no right to rely. (*Hofner v. Glen Ingram & Co.* (1985), 140 Ill. App. 3d 874, 489 N.E.2d 311.) In the present case, defendant has not alleged that the promise as to the future circumstances falls under an exception to the general rule, *i.e.*, where the false statements were part of a fraudulent scheme. See, *e.g., Carter v. Mueller* (1983), 120 Ill. App. 3d 314, 457 N.E.2d 1335; *cf. Sommer v. United States Savings Life Insurance Co.* (1984), 128 Ill. App. 3d 808, 471 N.E.2d 606 (future promise alleged to be part of general scheme of fraud).

Thus, defendant has failed to allege or establish that plaintiff misrepresented a material fact because statements regarding future events are opinions, not facts. (See *Gross Valentino Printing Co. v. Clarke* (1983), 120 Ill. App. 3d 907, 458 N.E.2d 1027.) Defendant has also failed to allege or establish that he had a right to rely on such statements because a party has no right to rely on mere expressions of opinion. See *Hofner v. Glen Ingram & Co.* (1985), 140 Ill. App. 3d 874, 489 N.E.2d 311.

In addition, as soon as an individual learns of the fraud, he is required to disaffirm or abandon the transaction with all reasonable diligence. If he acts as though the transaction is still binding, he waives all benefits of relief from the misrepresentations. (*Eisenberg v. Goldstein* (1963), 29 Ill. 2d 617, 195 N.E.2d 184, *cert. denied* (1964), 377 U.S. 964, 12 L. Ed. 2d 735, 84 S. Ct. 1645.) Defendant testified he was aware of the alleged fraud within four weeks of signing the agreement in July 1985. Defendant, however, retained possession of the premises, made payments of back rents, and did not allege fraudulent inducement until the counterclaim was filed after the case was on trial. By his actions, defendant waived any claim of fraud in inducing him to sign the agreement.

For similar reasons, we find that the trial court properly granted the motion *in limine* which precluded the introduction of any evidence regarding the time period before June 1985. The granting of

a motion *in limine* is a matter within the trial court's discretion. (*Kerns v. Lenox Machine Co.* (1979), 74 Ill. App. 3d 194, 392 N.E.2d 688.) We recognize that a motion *in limine* which precludes the opponent from presenting a valid defense is an abuse of discretion. (*Duffy v. Midlothian Country Club* (1985), 135 Ill. App. 3d 429, 481 N.E.2d 1037.) As we have stated, however, it was not a valid defense, absent proof of fraud, to argue that the June 1985 settlement agreement must be disregarded. The trial court properly restricted the evidence to a period after the date of the agreement and thus properly granted plaintiff's motion *in limine*.

▪ Defendant next contends that the trial court's "almost unremitting impatience with the defense coupled with its stubborn adherence to the exclusion of pre-June 1985 matters regardless of context induced the defense to omit" proof of defendant's loss of profits suffered after June 1, 1985. Defendant asserts that the damages were based upon the diminished use of his leasehold prior to that time. Defendant refers to his own "misunderstanding" and his "misconception," and concedes there were a "number of lapses of proof" in his case. Defendant places the blame for these misunderstandings and lapses on the court, concluding that the court provoked a failure of proof.

Defendant attempted numerous times to present testimony regarding claims arising prior to June 1985, which evidence was repeatedly and consistently barred. Defendant argues that as a result it would have been "pointless" to attempt to offer further proof of his damages incurred after June 1985. Parties should not be allowed to benefit on review from their failure to introduce evidence at trial. (*In re Marriage of Tyrrell* (1985), 132 Ill. App. 3d 348, 477 N.E.2d 523.) The record reveals that the trial court repeatedly told defendant not to anticipate its rulings. In addition, defendant was permitted to testify regarding income he allegedly lost after June 1985 as a result of the condition of his offices. Furthermore, we cannot rule on evidence which might have been erroneously barred without an offer of proof. Defendant made no offer of proof as to many of the elements of damages he sought. *Liberty Mutual Insurance Co. v. Williams Machine & Tool Co.* (1974), 21 Ill. App. 3d 510, 316 N.E.2d 255, *affirmed* (1975), 62 Ill. 2d 77, 338 N.E.2d 857.

▪ Defendant alleges that he lost profits from his law practice because of the leaking roof and the heating and cooling system problems. The problems prevented him from settling lawsuits; caused him to refer cases to other lawyers; and caused him to spend 300 hours less time on client matters than he had in other years. Defendant also

sought punitive damages and attorney fees.

Damages for lost profits are allowed only where the loss is proved with a reasonable degree of certainty, the court is satisfied that the opposing party's wrongful act caused the loss of profits, and the profits were reasonably within the contemplation of the defaulting party. (*Ribenbard v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 346 N.E.2d 494.) Defendant failed to present evidence which would permit a determination of damages within a reasonable degree of certainty. Defendant did not present evidence, *e.g.*, of the gross income he lost by failure to settle suits or by failure to try suits on a contingency basis. (See *Barton Chemical Corp. v. Pennwalt Corp.* (1982), 106 Ill. App. 3d 561, 436 N.E.2d 51; *S.A. Maxwell Co. v. DeSoto, Inc.* (1979), 73 Ill. App. 3d 844, 392 N.E.2d 33.) Instead, defendant merely testified that income was lost.

Defendant next contends that he was prevented from proving his counterclaim for punitive damages and attorney fees, both of which were dependent upon proof of fraud, because the court would not allow evidence regarding pre-June 1985 circumstances. Defendant argues that Morrow, Bazan and defendant presented sufficient evidence of the untenantability of much of the premises to withstand a motion for a directed verdict. Defendant points to the jury foreperson's note, during deliberations, that some members of the jury disagreed with the directed verdicts. That communication, however, has no bearing on the propriety of the directed verdict. Because we have held that defendant failed to demonstrate any fraud, we agree with the trial court's order directing verdicts in favor of plaintiff on the counterclaims for punitive damages and attorney fees. Absent a finding of fraud, a contractual agreement or a statutory provision, attorney fees and costs are not recoverable under this theory. See *Kerns v. Engelke* (1979), 76 Ill. 2d 154, 390 N.E.2d 859.

In regard to punitive damages, defendant failed to present evidence of plaintiff's willful or wanton conduct to support a claim for punitive damages. *Home Savings & Loan Association v. Schneider* (1985), 108 Ill. 2d 277, 483 N.E.2d 1225; *Laughlin v. Hopkinson* (1920), 292 Ill. 80, 126 N.E. 591.

Defendant also appeals from the directed verdict for past due rent and interest. In reviewing a directed verdict, this court must view all the evidence presented, and reasonable inferences therefrom, in a manner most favorable to plaintiff and affirm the trial court's judgment only if the evidence so overwhelmingly favored plaintiff that no contrary judgment on the evidence could stand. (*La Salle National Bank & Trust Co. v. City of Chicago* (1984), 128 Ill. App. 3d 656, 470

N.E.2d 1239.) Defendant admitted not paying the rent, and, in light of our finding that defendant failed to prove fraud, we hold that the trial court properly directed verdicts in favor of plaintiff for the amount of rent owed.

 Defendant next argues that the trial court erred in denying his motion, made during trial, to amend his counterclaim to conform to the proof by adding a cause of action for breach of an implied covenant of quiet enjoyment. Defendant relies on section 2—616(a) of the Code of Civil Procedure, which provides for amendment any time before final judgment on just and reasonable terms. Ill. Rev. Stat. 1985, ch. 110, par. 2—616(a).

The measure of damages for breach of covenant of quiet enjoyment is the difference between the rental value of the premises and the rent which the lessee agreed to pay, with such special damages which were directly and necessarily occasioned to the tenant by the landlord's wrongful act. (*64 East Walton, Inc. v. Chicago Title & Trust Co.* (1979), 69 Ill. App. 3d 635, 387 N.E.2d 751.) Here, plaintiff offered no evidence regarding the rental value of the leased office space with the alleged damage. His claims for special damages suffer the same deficiencies as those discussed above. The trial court properly denied defendant's motion to amend the counterclaim to conform with the proof.

We now address defendant's remarks about the manner in which he was treated during the proceedings before the trial court. In his brief, defendant points to numerous instances of what he finds to be proof that he "worked in a dangerously volatile climate." Plaintiff counters that "defendant's behavior at trial lacked the civility expected of a party." Plaintiff points to such incidents as defendant's dumping a glass of water in the courtroom to demonstrate the leaks in his office. Plaintiff also highlights defendant's repeated interruptions of the proceedings, even following the court's admonition that only defendant's attorney could address the court directly. Defense counsel repeatedly attempted to restrain defendant by admonishing him to be quiet; to answer questions properly during cross-examination; and to conduct himself with proper decorum.

 A judge must be allowed considerable latitude in conducting a trial. The judge's conduct and remarks are grounds for reversal only if they are such as ordinarily would create prejudice in the minds of the jury. (*Oko v. Rogers* (1984), 125 Ill. App. 3d 720, 466 N.E.2d 658.) The record shows that many of the comments complained of were made outside the presence of the jury. (See *Papageorgiou v. F. W. Woolworth Co.* (1978), 66 Ill. App. 3d 873, 383 N.E.2d 1346.)

The comments generally concerned issues which were not submitted to the jury.

Furthermore, a judge's impatience with unnecessary delays is not an expressed opinion on substantive issues determined in a trial. (See *Ercolino v. Jaffe* (1969), 113 Ill. App. 2d 363, 252 N.E.2d 76 (abstract of opinion).) When severely improper conduct occurs, the trial court has the duty to act promptly of its own motion and stop misconduct so that the litigants are not prevented from receiving a fair trial. See *Belfield v. Coop* (1956), 8 Ill. 2d 293, 134 N.E.2d 249; *Blake v. Delhotel* (1976), 39 Ill. App. 3d 725, 350 N.E.2d 880.

We find that overall, the trial court's attempts to contain the length of the trial and restrict the evidence to that which was relevant and admissible under the trial court's rulings were praiseworthy and did not show any prejudice against defendant. (See *Closterides v. Dalton* (1964), 49 Ill. App. 2d 286, 200 N.E.2d 29 (abstract of opinion.).) The trial court's absence of prejudice against defendant is further evidenced by the fact that the court impartially reprimanded both sides at different times throughout the proceedings. (See *Taylor v. City of Berwyn* (1939), 372 Ill. 124, 22 N.E.2d 930.) Rather than evidencing bias against defendant, the record reveals that, under the circumstances, the trial court exercised extreme patience in attempting to hold an orderly proceeding. (See *Sullivan v. Berardi* (1980), 80 Ill. App. 3d 417, 399 N.E.2d 708.) Unfortunately, defendant often conducted himself in such a way that the trial court's attempts to maintain order were unsuccessful. Defendant's contention that the trial court exhibited prejudice against defendant is not substantiated by the record. See *Ferraro v. Augustine* (1964), 45 Ill. App. 2d 295, 196 N.E.2d 16.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

WHITE and FREEMAN, JJ., concur.